EL PUEBLO DE PUERTO RICO, apelado, *v.* ORLANDO ROSALY SOTO, apelante.

*Número:* CR-88-3 *Resuelto:* 27 de junio de 1991

730

*José Enrique Ayoroa Santaliz,* abogado del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* e *Irma Alicia Rodríguez Avilés, Fiscal Auxiliar Superior,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Aproximadamente a las 7:00 A.M. del día 20 de septiembre de 1985 un individuo irrumpió, arma de fuego en mano, en una residencia localizada en el Barrio Romero de Villalba, hogar donde vivía el matrimonio compuesto por Pablo Santiago Rodríguez y Leticia Velázquez Borrero junto a sus tres (3) pequeños hijos.[1] Conforme surge del testimonio que prestara ante el tribunal de instancia Life Santiago Velázquez —el mayor de los hijos y el único de ellos con capacidad suficiente para narrar lo allí sucedido en un tribunal de justicia—[2] el intruso, *a quien él conocía de vista por haberlo visto varias veces con anterioridad al día de los hechos en su casa,* le informó a su papá: "Felo Bonilla me mandó a matarte. Pero yo no quiero matarte, tú eres mi amigo, quiero chavos para embarcarme." E.N.P., pág. 2.

Dicho sujeto, de acuerdo con la declaración del referido testigo, procedió a "amarrarle" las manos al matrimonio y "metió" a los niños en el cuarto de baño de la residencia. Allí permaneció Life Santiago Velázquez hasta que, en un momento dado, su mamá se allegó al referido cuarto de baño y le instruyó para que huyera. Éste se arrastró por el piso de la casa, logrando salir fuera de la misma. Estando en una pequeña estructura aledaña a la casa principal, lugar donde se había refugiado, el testigo escuchó unos disparos de arma de fuego. Luego de observar al instruso salir corriendo de su hogar, el niño regresó a ésta, donde pudo observar los cuerpos, inertes y ensangrentados, de sus padres en el piso de la residencia. Se dirigió, entonces, el niño a casa de un vecino, a

---

[1] Life, Pablo y Atabé Santiago Velázquez.

[2] Para el 20 de septiembre de 1985, Life Santiago Velázquez contaba con ocho (8) años de edad. El proceso relativo a los hechos delictivos cometidos se celebró aproximádamente dos (2) años más tarde; es decir, para la fecha en la que presta testimonio ante el tribunal de instancia, el referido testigo contaba con diez (10) años de edad.

quien le informó que un hombre, *persona a quien él conocía*, había matado a sus padres.

Ese mismo día, la Policía de Puerto Rico preparó, con la ayuda de Life Santiago Velázquez, un boceto del rostro del asesino. Días más tarde, *en dos (2) ocasiones distintas*, Life Santiago Velázquez identificó la fotografía del aquí apelante Orlando Rosaly Soto, *en procedimiento de identificación por fotografías*, como la persona responsable de causarle la muerte a sus padres.

El Ministerio Fiscal radicó, ante el Tribunal Superior de Puerto Rico, Sala de Ponce, pliegos acusatorios contra el apelante Rosaly Soto por los delitos de infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y por el de asesinato en primer grado (dos (2) cargos). Habiendo sido el apelante anteriormente convicto por la comisión de varios delitos graves, sentencias que eran finales y firmes, el Estado alegó "delincuencia habitual".

El proceso, celebrado ante Jurado, se llevó a cabo durante los meses de noviembre y diciembre de 1987. En adición al testimonio del niño Life Santiago Velázquez, el Ministerio Fiscal presentó el de nueve (9) testigos adicionales. Merece que se destaquen algunos aspectos del conjunto total de dichos testimonios. Los mismos, en primer lugar, corroboran el testimonio del niño Life Santiago Velázquez no sólo en cuanto a su manifestación, hecha ese día a los vecinos, de que él "conocía" al intruso sino que en cuanto a la seguridad y confiabilidad de la identificación que, por fotografías, él hiciera del aquí apelante. En segundo lugar, se presentó prueba fehaciente de que una persona, de nombre Orlando Rosaly, viajó el *21* de septiembre de 1985 en un vuelo de San Juan a la ciudad de Philadelphia, Estados Unidos de América; boleto que había sido comprado el *19* de septiembre de 1985.[3] Por otro lado, el Estado presentó prueba del hecho que el apelante Orlando Rosaly Soto fue extraditado del Estado de Pennsylvania el 12 de agosto de 1986. En cuarto lugar, desfiló prueba ante el

---

[3] En otras palabras, el boleto se compró el día *antes* de la comisión de los hechos delictivos, viajando la persona a los Estados Unidos el día *después* de la ocurrencia de los mismos.

tribunal de instancia demostrativa que los agentes de la Policía el día de los hechos ocuparon en la residencia del matrimonio asesinado no sólo sustancias controladas, sino parafernalia relacionada y utilizada en relación con drogas narcóticas. Por último, merece destacarse que el tribunal de instancia admitió en evidencia, a solicitud del Ministerio Fiscal y sobre la objeción de la defensa, un documento suscrito por el aquí apelante indicativo de que él era conocido, adicionalmente, por el nombre de "Félix Ilert."

En su turno, la defensa presentó tres (3) testigos. El testimonio de los mismos tuvo el propósito de impugnar la credibilidad del testigo de cargo principal —esto es, el de Life Santiago Velázquez— en cuanto a diferentes aspectos del mismo. Sometido el caso a los señores del Jurado, éstos —obviamente dándole entero crédito a la declaración del niño Life Santiago Velázquez— emitieron veredictos de culpabilidad en todos y cada uno de los cargos imputados. Sentenciado que fuera por el tribunal de instancia a cumplir una larga condena,[4] Orlando Rosaly Soto acudió ante este Tribunal señalando la supuesta comisión de tres (3) errores. Mediante dichos señalamientos, el apelante le imputa al foro de instancia haber errado:

*Primero*:. . . al admitir, no obstante la fundada oposición vertida al récord, prueba sobre la identidad del Apelante en los Estados Unidos, prueba que el propio Apelante ofreció como parte de un procedimiento anterior al juicio sobre defensa de coartada y que no fue en efecto presentada en el juicio. Constituyendo error perjudicial la admisión de esa prueba y el acceso de la misma a los señores del Jurado.

*Segundo*:. . . al admitir prueba de que el Apelante so color de fuga y mediante la compra y utilización legítima de un boleto se

[4] "a. En la causa G-86-1647, por Asesinato en Primer Grado, una sentencia de 99 años de presidio, concurrentes con 99 años por Delincuencia Habitual.

"b. En la causa G-86-1648, por Asesinato en Primer Grado, una sentencia de 99 años de presidio, concurrentes con 99 años por Delincuencia Habitual.

"c. En la causa G-86-1649, por el Artículo 8 de la Ley de Armas, una sentencia de 5 años concurrentes con 20 años de presidio por Delincuencia Habitual.

"d. En la causa G-86-1650, por el Artículo 6 de la Ley de Armas, una sentencia de 4 años de presidio concurrentes entre sí con 20 años por Delincuencia Habitual . . . ." Escrito de apelación, pág. 1.

transportó por vía aérea hacia los Estados Unidos en fechas cercanas a la ocurrencia de los hechos imputados, constituyendo error perjudicial la admisión de esa prueba y el acceso de la misma a los señores del Jurado.

*Tercero:.* . . al admitir la prueba a la cual se hace referencia en los dos señalamientos de error que preceden, dando margen a que los señores del [J]urado se vieran impedidos de evaluar todos los elementos de juicio envueltos y como producto mental de dicho juicio la conclusión de la existencia de duda razonable respecto de la identificación del acusado y su consiguiente responsabilidad criminal en estos casos. Escrito de apelación, págs. 2–3.

Discutimos dichos señalamientos de error siguiendo el orden establecido por el apelante.

## I

*La correcta comprensión del primer señalamiento de error hace necesario que hagamos un "poco de historia".* El apelante Rosaly Soto, en cumplimiento de las disposiciones de la Regla 74 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, notificó en tiempo que se proponía presentar durante el juicio la defensa de coartada. A esos efectos, informó que para "la fecha y hora de la alegada comisión" de los hechos imputados, él se "encontraba en la ciudad de Harrisburg, Estado de Pennsylvania, o en ruta hacia esa ciudad". Alegato del apelante, pág. 3.

El Ministerio Público, amparándose en las disposiciones a esos efectos de la citada Regla 74 de Procedimiento Criminal y la jurisprudencia interpretativa de la misma,[5] solicitó del apelante información en relación con la coartada anunciada. Entre los documentos que a esos fines le. suministrara el apelante al Ministerio Fiscal se encuentra el escrito que el tribunal de instancia, a petición del Estado y sobre la objeción de la defensa, admitió en evidencia y que, precisamente, es objeto del primer señalamiento de error.

---

[5] Véase, entre otros, *Pueblo v. Tribunal Superior*, 101 D.P.R. 133 (1973).

Dicho documento lee de la siguiente manera:

January 17, 1987
TO WHOM IT MAY CONCERN

I, Orlando Rosaly Soto, also known as Félix Ilert, authorize the Department of Justice of the Commonwealth of Puerto Rico, in general, and particularly the Ponce District Attorney, or their representatives to examine my personal records in Mount Pleasant Hispanic American Center, in Harrisburg, Pa.: and to interview the following witnesses:

 a. Awilda Amadeo
 b. Elsie Claudio
 c. Teresa Sánchez
 d. Elías Santa
 e. Reyita Cintrón

[Firmado por Orlando Rosaly Soto]
ORLANDO ROSALY SOTO
or
FELIX ILERT

Alegato del apelante, pág. 16.

Tenemos, por otro lado, que durante el turno de presentación de prueba por parte del Estado, uno de los testigos de cargo —el Sargento de la Policía Víctor Santiago Franceschi— declaró, al testificar sobre el número de veces en que había visto o interrogado al menor Life Santiago Velázquez después del día de los hechos, que el mismo día de la ocurrencia de los asesinatos un vecino del lugar donde habían ocurrido los asesinatos había sido privado, a punta de revólver, de su vehículo de motor. La investigación de *esos* hechos condujo a la Policía hasta una persona que responde al nombre de Félix Domingo Ilert De Jesús. Habiendo localizado a este individuo y ante la posibilidad de que dichos hechos tuvieran relación con los asesinatos, el sargento Santiago Franceschi entendió procedente realizar con éste una identificación de rueda de detenidos (*line-up*) en donde participaría no sólo el vecino perjudicado por el robo del vehículo sino que el testigo de los asesinatos, el niño Life Santiago Velázquez. Declaró el sargento Santiago Franceschi que, a pesar de que el dueño del vehículo identificó a Ilert De Jesús como la

persona que lo había asaltado, el niño Life Santiago Velázquez informó que éste era una persona distinta a la que había matado a sus padres.

En relación con los hechos específicos que dan lugar al primer señalamiento de error, procede adicionalmente que se destaque que la representación legal del apelante, *con anterioridad al momento en que el Estado "sometiera" su caso*, le informó al tribunal de instancia que *no* iba a presentar la defensa de coartada que había anunciado, esto es, que "renunciaba" a la misma. Ello no obstante, a petición del fiscal y sobre la oportuna y enérgica objeción de la defensa, el tribunal de instancia admitió en evidencia el documento que anteriormente transcribiéramos y en el cual el apelante Rosaly Soto expresa que "también es conocido como Félix Ilert".

En vista de las *particulares circunstancias* del caso, somos del criterio que efectivamente erró el tribunal de instancia al admitir dicho documento en evidencia. La admisión en evidencia del referido documento violenta la cláusula constitucional contra la autoincriminación.

II

■ De particular pertinencia, e importancia, a los hechos de este caso resultan ser las disposiciones de las Secs. 7 y 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Las citadas disposiciones constitucionales, en lo pertinente, garantizan: que ninguna persona "será privada de su libertad o propiedad sin el debido proceso de ley"; que la culpabilidad o inocencia de una persona acusada de la supuesta comisión de un delito será dilucidada en un "juicio rápido y público"; que "[n]adie será obligado a incriminarse mediante su propio testimonio"; que "el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra", y que todo acusado disfrutará de la "presunción de inocencia". Const. E.L.A., ante, ed. 1982, págs. 275 y 308.

■ Como consecuencia jurídica inescapable del antes transcrito mandato constitucional, *es el Estado el que viene en la obligación de demostrar la culpabilidad de un acusado "más allá de duda razonable" mediante la presentación en evidencia, en juicio público, de prueba que sea "suficiente en derecho".* El Estado, como es sabido, no cumple con esa obligación presentando prueba que sea meramente "suficiente", esto es, que meramente verse sobre todos los elementos del delito que se imputa. Dicha prueba, en adición, tiene que ser "satisfactoria", es decir que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986). En palabras llanas y sencillas, bajo nuestro ordenamiento jurídico —distinto a algunas jurisdicciones extranjeras— un imputado de delito *no* tiene obligación de aportar prueba alguna en su defensa, pudiendo éste descansar enteramente en la presunción de inocencia que le cobija.

■ Es quizás debido a ello que, de primera intención, las disposiciones de la citada Regla 74 de Procedimiento Criminal *aparentan* estar en conflicto con las antes mencionadas disposiciones constitucionales. Como es sabido, la mencionada Regla 74, *para la fecha en que el apelante Rosaly Soto fue sometido a juicio,*[6] establecía en lo pertinente que:

> Cuando el acusado hiciere alegación de no culpable e intentare establecer la defensa de incapacidad mental en el momento de la alegada comisión del delito imputádole, *o cuando su defensa fuera la de coartada, deberá presentar en el Tribunal Superior* dentro de los diez días siguientes al acto de la lectura de acusación o diez días antes del juicio en el Tribunal de Distrito *un aviso al efecto, con notificación al fiscal.* Si el acusado no presentare dicho aviso no tendrá derecho a ofrecer evidencia tendente a establecer tales defensas. El tribunal podrá, sin embargo, permitir que se ofrezca

---

[6] La citada Regla 74 fue enmendada, *en su primer párrafo,* por la Ley Núm. 65 de 5 de julio de 1988.

dicha evidencia cuando se demostrare la existencia de causa justificada para haberse omitido la presentación del aviso. En tal caso, el tribunal podrá decretar la posposición del juicio a solicitud de El Pueblo, conceder permiso para la reapertura del caso de El Pueblo, o proveer cualquier otro remedio apropiado.

El acusado que desee establecer la defensa de incapacidad mental deberá suministrar al Ministerio Público, si éste así lo solicita, la siguiente información:

. . . . . . . .

*El acusado que desee establecer la defensa de coartada deberá suministrar al Ministerio Público, si éste así lo solicita, la siguiente información:*

(a) Sitio en que se encontraba el acusado a la fecha y hora de la comisión del delito.

(b) Desde qué hora se encontraba el acusado en ese sitio.

(c) Hasta qué hora estuvo el acusado en ese sitio.

(d) Informar qué documentos, escritos, fotografías o papeles se propone utilizar el acusado para establecer su defensa de coartada, informando en poder de quién se encuentran.

El Ministerio Público tendrá la obligación recíproca de informar al acusado si éste así lo solicita el nombre y dirección de los testigos que se propone utilizar para refutar la defensa de coartada o incapacidad mental. (Énfasis suplido.) 1984 Leyes de Puerto Rico 71–72.

■ Esta *aparente* incongruencia —entre el derecho constitucional de un acusado a no incriminarse y la obligación que le impone a éste la Regla 74 de Procedimiento Criminal, ante, no sólo de *notificar* que se propone presentar la defensa de coartada sino que de *suministrar información* al Ministerio Público en relación con la misma— fue, a nuestro juicio, parcialmente resuelta o disipada por este Tribunal en *Pueblo v. Tribunal Superior*, 92 D.P.R. 116 (1965). Allí expresamos:

1. La Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho a no incriminarse en las siguientes palabras: "Nadie será obligado a incriminarse mediante su propio testimonio . . ." A primera vista este privilegio tan celosamente guardado parece confligir con las disposiciones estatutarias que requieren la notificación anticipada de determinada defensa en los procesos criminales. Pero a medida que se analiza

detenidamente el reparo resulta más aparente que real. *Es preciso apuntar que estas disposiciones en forma alguna conculcan la presunción de inocencia, pues, independientemente de que se haga la notificación, el Estado viene siempre obligado a establecer un caso prima facie y no queda relevado de probar la responsabilidad del acusado fuera de duda razonable.* De ahí que, aun cuando éste haya anunciado su propósito de plantear la defensa de locura o la de coartada, al concluir la prueba de cargo, si la estima insuficiente, *puede optar por no presentar evidencia alguna. Por tanto, en efecto la notificación anticipada no le expone a suministrar prueba en su contra.*

Por otro lado la información requerida, por referirse a una defensa afirmativa del encausado, es de naturaleza esencialmente exculpatoria. Además, se trata de la evidencia que éste intenta utilizar en el acto del juicio. En cuanto a las defensas específicas a que se refiere la Regla 74 *es de notarse que cualquier información que se suministre no tiende a establecer el caso de El Pueblo; de ahí que no pueda utilizarse como índices de prueba por el ministerio público.* (Énfasis suplido y escolio omitido.) *Pueblo v. Tribunal Superior,* ante, págs. 122–123.

El Tribunal Supremo federal igualmente ha tenido ante su consideración la constitucionalidad de disposiciones estatutarias como la nuestra donde se requiere notificar al Estado de la propuesta defensa de coartada y proveer información respecto a la misma. Específicamente, en *Williams v. Florida,* 399 U.S. 78 (1970), dicho Tribunal abordó el planteamiento de si un estatuto del estado de Florida, similar a nuestra citada Regla 74, violaba el privilegio contra la autoincriminación plasmado en la Quinta Enmienda de la Constitución federal. A esos efectos concluyó dicho Foro que la notificación al estado de la defensa de coartada y el revelar el nombre de los testigos que usaría no violaba su derecho a no incriminarse. Indicó:

. . . However "testimonial" or "incriminating" the alibi defense proves to be, it cannot be considered "compelled" within the meaning of the Fifth and Fourteenth Amendments . . . . Nothing in such a rule requires the defendant to rely on an alibi or prevents

him from abandoning the defense; these matters are left to his unfettered choice.[7] *Williams v. Florida*, ante, pág. 84.

■ Merece que se señale que en la esfera federal, la disposición reglamentaria que regula la materia y que corresponde a la citada Regla 74 local, ante, lo es la Regla 12.1 de las Reglas de Procedimiento Criminal federal. Dicha disposición reglamentaria establece, *en lo pertinente*, que:

(f) *Inadmissibility of Withdrawn Alibi.* Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention. Fed. Rules Cr. Proc., Rule 12.1(f), 18 U.S.C.

Como podemos notar, la disposición reglamentaria que *en la jurisdicción federal* controla la situación ante nuestra consideración establece que una vez el imputado de delito "retira" o informa que no va a presentar la defensa de coartada que anteriormente había anunciado o notificado, el Fiscal *está impedido* de presentar en evidencia cualquier prueba que el imputado le hubiera suministrado en relación con el aviso de coartada. El Tribunal Supremo federal no se ha pronunciado sobre la prohibición contenida en la antes citada Regla 12.1(f) de Procedimiento Criminal federal desde un punto de vista constitucional. Los tribunales apelativos de última instancia de varias jurisdicciones estatales —los cuales no cuentan con una disposición, como la citada Regla 12.1(f), que regule la situación en que el acusado retira la defensa de coartada previamente anunciada— han determinado, sin embargo, que el Estado está constitucionalmente vedado de usar contra el acusado la información revelada por él en cumplimiento de una disposición estatutaria a esos efectos. Véanse, entre otros: *State v. Curby*, 553 S.W.2d 566 (1977); *State ex rel. Simos v. Burke*, 163 N.W.2d 177 (1968); *State v. Cocco*, 55 N.E.2d 430 (1943). Véase, además, la discusión en R.P. Mosteller, *Discovery Against the Defense: Tilting the Adversarial Balance*, 74 Cal. L. Rev. 1567, 1647–1648 (1986).

---

[7] Véase, en adición, *Wardius v. Oregon*, 412 U.S. 470 (1973).

■ La Regla 74 de Procedimiento Criminal nuestra, ante, tampoco contiene la referida prohibición. Ello, no obstante, se impone la misma solución. El derecho constitucional contra la autoincriminación, consagrado en la Sec. 11 del Art. II de nuestra Constitución, ante, *hace mandatoria en nuestra jurisdicción la existencia de dicha prohibición.* Bajo las circunstancias *específicas* del caso de autos, la referida cláusula constitucional necesariamente se levanta como una barrera infranqueable que impide que el Estado utilice, en el descargo de su obligación de demostrar la culpabilidad de un acusado más allá de duda razonable, evidencia que ha sido suministrada por el propio acusado.

■ No debe, en consecuencia, haber la menor duda sobre el hecho de que: a pesar de que en nuestra jurisdicción un imputado de delito viene en la obligación, en virtud de lo dispuesto por la citada Regla 74 de Procedimiento Criminal, de notificar al tribunal y al Ministerio Fiscal de su intención, o propósito, de presentar la defensa de coartada durante el juicio, y que, en adición a ello, el imputado, de así ser requerido por el Ministerio Fiscal, viene en la obligación de suministrar la información reseñada por la citada Regla 74 referente a dicha coartada, y que ello no viola *per se* la disposición constitucional que protege contra la autoincriminación, *resolvemos que del imputado de delito, en el ejercicio de su derecho a no presentar prueba alguna, renunciar a la presentación de prueba a ese respecto, el Estado no puede presentar en evidencia prueba alguna que haya obtenido del imputado como consecuencia de la aplicación de la referida Regla 74 de Procedimiento Criminal.*

■ En otras palabras, el Estado *únicamente* puede hacer uso de —y presentar en evidencia— prueba obtenida como consecuencia de la aplicación de las disposiciones de la citada Regla 74 de Procedimiento Criminal cuando el imputado de delito efectivamente presenta la defensa de coartada durante el proceso. La solución contraria, repetimos, atentaría contra la cláusula

constitucional que protege a todo acusado contra la autoincriminación.

Habiendo determinado, por las razones antes expresadas, que cometió error el tribunal de instancia al admitir en evidencia, sobre la oportuna objeción de la defensa, el documento en controversia, debemos decidir si dicho error es uno que conlleva la revocación de las sentencias apeladas.

## III

La Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, establece que:

> No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:
>
> (1) La evidencia fue erróneamente admitida *a pesar de la oportuna y correcta objeción* de la parte perjudicada por la admisión, y
>
> (2) el tribunal que considera *el efecto* de la admisión errónea entiende que ésta *fue factor decisivo o sustancial* en la sentencia o decisión cuya revocación se solicita. (Énfasis suplido.)

En *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991), manifestamos que, demostrado el hecho por el apelante que la evidencia en controversia fue admitida por el foro de instancia sobre su oportuna y correcta objeción, este Tribunal *se circunscribirá a determinar* si la referida evidencia fue o no *factor decisivo o sustancial* en el resultado del caso. En la mencionada decisión intentamos definir, o establecer el significado de, la frase "factor decisivo o sustancial". A esos efectos, expresamos en la referida decisión, que:

> Somos del criterio que el término clave en el inciso (2) de la transcrita Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, lo es la palabra "factor". *¿Qué significa el que una evidencia erróneamente admitida haya sido factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita?* A nuestro juicio la contestación es sorprendentemente sencilla. Entendemos que definitivamente *no* nos podemos *limitar meramente* a cuestionarnos si existe

otra prueba que a juicio del tribunal apelativo demuestra la culpabilidad del apelante más allá de duda razonable. El criterio que debe utilizarse —independientemente de la existencia de esa otra prueba— *en casos "ordinarios" de errores en la admisión de evidencia* es si de no haberse admitido erróneamente la prueba en controversia "probablemente el resultado hubiera sido distinto". *Pueblo v. Mangual Hernández,* 111 D.P.R. 136, 145 (1981). *Esto es, si la evidencia erróneamente admitida puede haber tenido una influencia notable, determinante, y hasta desmedida, en la mente del juzgador de los hechos en relación con el veredicto, fallo o sentencia que el mismo emitiera en el caso, sea este civil o criminal.* Véase *Kotteakos v. United States,* 328 U.S. 750 (1946).

El caso específico ante nuestra consideración envuelve uno de los errores que el Tribunal Supremo de los Estados Unidos clasifica como "error constitucional". Véase *Chapman v. California,* 386 U.S. 18 (1967). Como es sabido, en dicho caso el Supremo federal resolvió que cuando se trata de un "error constitucional", para que el mismo pueda ser considerado como uno "no perjudicial" por el tribunal apelativo, dicho foro tiene que estar convencido de ello "más allá de duda razonable". En *Pueblo v. Pellot Pérez,* 121 D.P.R. 791 (1988), caso en que la defensa había objetado oportunamente la prueba erróneamente admitida, resolvimos que el Estado —que resultaba ser el "beneficiario" del "error constitucional" cometido— venía en la obligación de probar más allá de duda razonable que el error no tuvo ese efecto. (Énfasis suplido y en el original.)[8] *Pueblo v. Ruiz Bosch,* ante, págs. 782–783 esc. 5.

En el presente caso, como expresáramos anteriormente, la defensa objetó, oportuna y correctamente, la presentación en evidencia del documento en controversia. Ello no obstante, el tribunal de instancia erróneamente admitió el mismo. En vista de las disposiciones de la citada Regla 4 de Evidencia y de lo resuelto en *Pueblo v. Ruiz Bosch,* ante, venimos en la obligación de resolver si dicho documento pudo haber tenido una influencia notable, determinante, y hasta desmedida, en los señores del Jurado que intervinieron en el presente caso a nivel de instancia como juzgadores de los hechos; esto es, si independientemente del

---

[8] En *Pueblo v. Ruiz Bosch,* 127 D.P.R. 762 (1991), la controversia giraba alrededor de una "admisión extrajudicial" que alegadamente el allí apelante le había hecho a la Policía de Puerto Rico.

resto de la prueba presentada por el Estado, de no haberse admitido este documento en evidencia probablemente el resultado —el veredicto emitido por el Jurado— hubiese sido distinto.

*Contestamos la referida interrogante en la negativa.* Como surge de la relación de los hechos, el documento erróneamente admitido en evidencia por el tribunal de instancia lo que "estableció", o trajo ante la consideración del juzgador de los hechos, fue una *curiosa coincidencia* entre el nombre que el apelante Rosaly Soto proporcionó, como su alias, en dicho documento y el nombre de la persona que finalmente fue identificada como el asaltante que, el día de los hechos, despojó de su automóvil a un vecino del lugar.

Procede que se enfatice, sin embargo, que la prueba de cargo *claramente estableció*, por medio del testimonio del menor Life Santiago Velázquez, que *sólo una persona participó en la comisión de los asesinatos* y que, a través del testimonio del sargento Santiago Franceschi, la persona responsable de los asesinatos y el referido asaltante *eran dos (2) personas completa y totalmente distintas.*

Habiendo claramente establecido la prueba presentada lo anteriormente señalado, no vemos cómo pudo el Jurado que intervino en el caso haber llegado a otra conclusión que no fuera la de que la coincidencia señalada en los nombres no tenía mayor importancia y relevancia. La única posibilidad de perjuicio para el apelante resultante de la admisión en evidencia del documento en controversia, esto es, que el Jurado dedujera de la coincidencia en los nombres que estas dos (2) personas —el apelante y el asaltante— efectivamente actuaban el día de los hechos en "concierto y de común acuerdo", es una que no pasa de ser una mera conjetura que realmente no agrava la situación del apelante. La prueba presentada por el Estado respecto a éste es una que *claramente* lo señala como la persona *directamente responsable* de la comisión de los asesinatos. Ante dicha situación, sostener que la no presentación del documento en evidencia probablemente hubiera tenido el efecto de variar el veredicto rendido por el Jurado constituye no sólo una infundada especulación, sino que

una ilusión. Entendemos, en consecuencia y más allá de duda razonable, que el documento erróneamente admitido no tuvo una influencia notable y determinante en el veredicto que emitieran los señores del Jurado que intervinieron en el caso —*Pueblo v. Ruiz Bosch*, ante— razón por la cual el error cometido no amerita que las convicciones decretadas sean revocadas por motivo del mismo.

## IV

Discutimos conjuntamente los señalamientos segundo y tercero debido a la estrecha relación existente entre los mismos. Mediante el segundo señalamiento de error, el apelante Rosaly Soto señala como errónea la determinación del foro de instancia de permitirle al Ministerio Fiscal presentar prueba testifical, y documental, que claramente demostró que: un día *antes* de la comisión de los hechos delictivos, una persona compró un pasaje a nombre de Orlando Rosaly en una agencia de viajes de Ponce, pasaje "de ida" con destino a la ciudad de Filadelfia, estado de Pennsylvania; que un día *después* de haberse perpetrado los asesinatos, ese pasaje fue efectivamente utilizado, viajando una persona a la mencionada ciudad de Filadelfia bajo el nombre de Orlando Rosaly, y, finalmente, que agentes de la Policía de Puerto Rico extraditaron, en el mes de agosto de 1986, al apelante Orlando Rosaly Soto de la ciudad de Harrisburg, estado de Pennsylvania.

Rosaly Soto sostiene, en síntesis, que dichos testimonios "evidencian la ejecución de actos legítimos llevados a cabo en el ejercicio del derecho a la vida, a la libertad y al disfrute de su propiedad que todo ciudadano goza en nuestra jurisdicción" (alegato del apelante, pág. 33) y que, en consecuencia, dicha prueba era una "de *escasa y/o remota relevancia*, que es traída al r[é]cord con imbricación de sofisma y tinte de fuga teniendo lógicamente el efecto de causar *desorientación y confusión* en los señores del Jurado" (énfasis suplido) íd.; razones por las cuales, según alega, la referida prueba resultaba ser inadmisible en evidencia.

Mediante el tercero de sus señalamientos, el apelante sostiene, en síntesis, que el alegado error cometido por el foro de instancia al admitir la evidencia anteriormente reseñada "impidió" que se formara en la mente de los señores del Jurado duda razonable sobre su culpabilidad, en específico "respecto de la identificación del acusado y su consiguiente responsabilidad criminal en estos casos". Alegato del apelante, pág. 34.

A esos efectos, la distinguida representación legal de Rosaly Soto nos indica que el procedimiento seguido por la Policía de Puerto Rico para identificar a éste como el responsable de los hechos delictivos —el de fotografías— no era el indicado a seguir conforme las circunstancias específicas del caso. Señala que la prueba "erróneamente" admitida por el tribunal de instancia no sólo "opaca" ese hecho, sino que impide apreciar en su justa perspectiva una serie de contradicciones en que incurrieron los testigos de cargo Life Santiago Velázquez y el sargento Santiago Franceschi en lo referente a la descripción e identificación de su persona, impidiéndose de esa forma, repetimos, que en la mente del juzgador de los hechos se pudiera conculcar una duda razonable respecto a su culpabilidad.

■ Los referidos señalamientos de error son unos que, obviamente, resultan ser inmeritorios. El primero de ellos nos obliga, aun cuando brevemente, a examinar las disposiciones de las Reglas 18 y 19 de Evidencia, 32 L.P.R.A. Ap. IV. La primera de dichas disposiciones reglamentarias establece, *como principio general,* que:

(A) Excepto cuando de otro modo se disponga por ley o por estas reglas, *toda evidencia pertinente es admisible.* Evidencia no pertinente es inadmisible.

(B) Evidencia pertinente es aquella tendente a hacer la existencia de un hecho más probable o menos probable de lo que sería sin tal evidencia; dicho hecho debe a su vez, referirse a una cuestión en controversia o a la credibilidad de algún testigo o declarante. (Énfasis suplido.) 32 L.P.R.A. Ap. IV, R. 18.

■ Por su parte, y no obstante lo antes establecido, la citada Regla 19 de Evidencia dispone que:

Evidencia pertinente *puede ser excluida* cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores:

(a) Peligro de causar perjuicio indebido

(b) probabilidad de confusión

(c) desorientación del jurado

(d) dilación de los procedimientos

(e) innecesaria presentación de prueba acumulativa. (Énfasis suplido.)

Dados los *hechos específicos* del caso ante nuestra consideración, *resulta realmente difícil de entender el señalamiento del apelante a los efectos de que la prueba por él objetada* —esto es, aquella respecto a la compra del pasaje bajo el nombre de Orlando Rosaly, de la utilización de ese pasaje para trasladarse a la ciudad de Filadelfia y sobre la extradición del apelante del estado de Pennsylvania— *es una que no era pertinente al caso ante nuestra consideración.*

 No debemos perder de vista que *el hecho en controversia* en el caso ante nuestra consideración lo es si el apelante Orlando Rosaly Soto fue o no la persona que el 20 de septiembre de 1985 asesinó, en jurisdicción de Ponce, Puerto Rico, a Pablo Santiago Rodríguez y Leticia Velázquez Borrero. Conforme correctamente señala un estudioso de la materia, en "último término, decir que una evidencia es *'pertinente'* es decir que tiene el *mínimo valor probatorio* que justifica que se reciba como un elemento de prueba. . . . Dicho asunto deberá referirse a una *cuestión en controversia* o a la *credibilidad de un testigo* o declarante. . . . El *'test'* no es de si la evidencia ofrecida es suficiente para establecer o demostrar el hecho en controversia. Como se ha dicho tantas veces en relación con este asunto, *'a brick is not a wall'. Ni* siquiera es necesario que la evidencia ofrecida, de ser creída, tenga el efecto de hacer el hecho en controversia más probable que otros hechos o hipótesis de lo que ocurrió. Eso sería *demasiado pedir* para establecer pertinencia. . . . *Se considera pertinente la evidencia que, en alguna medida, ayuda al*

*juzgador a decidir si el hecho en controversia ocurrió o no ocurrió".* (Énfasis suplido y en el original.)(9)

La evidencia objetada por el apelante Rosaly Soto, admitida en evidencia por el tribunal de instancia, *¿ayudaba a los señores del Jurado en el presente caso a decidir si Orlando Rosaly Soto era o no el responsable de los asesinatos cometidos?* La contestación en la afirmativa parece ser obvia.

■ En primer lugar, dicha prueba afecta de manera afirmativa, o fortalece, el testimonio brindado por el menor Life Santiago Velázquez —y, por ende, la *credibilidad* del mismo— respecto a las manifestaciones que, en presencia del referido testigo, alegadamente hiciera el intruso al padre del mencionado menor a los efectos de que: "Felo Bonilla me mandó a matarte. Pero yo no quiero matarte, tú eres mi amigo, *quiero chavos para embarcarme."* (Énfasis suplido.) E.N.P, pág. 2. Por otro lado, no tenemos duda sobre el hecho que resultaba altamente pertinente, relevante y de gran ayuda para los señores del Jurado, que en el presente caso tenían la grave responsabilidad de emitir juicio sobre la culpabilidad o inocencia del apelante, una prueba indicativa de que el alegado perpetrador de los hechos imputados había realizado unos "preparativos" con el aparente propósito de evadir la justicia en esta jurisdicción una vez cometiera los hechos. Hemos manifestado que la "huida de un acusado del lugar de los hechos" constituye evidencia tendente a demostrar responsabilidad. *Pueblo v. Castro,* 75 D.P.R. 672 (1953). Es prerrogativa, y labor, del juzgador de los hechos evaluar el peso que debe dársele a evidencia indicativa de huida del lugar de los hechos. La prueba sobre huida, por sí sola, no es suficiente para establecer culpa; mas su pertinencia en conjunto con el resto de la prueba no puede ser cuestionada. *Pueblo v. Rivera Carmona,* 108 D.P.R. 866 (1979); *Pueblo v. Delgado Lafuente,* 97 D.P.R. 266 (1969); *Pueblo v. Vega Santos,* 88 D.P.R. 272 (1963). Tanto es así que, de

---

(9) Véase E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia,* San Juan, Pubs. J.T.S., 1979, Vol. I, págs. 59–60.

presentarse alguna evidencia sobre "huida", ello requiere una instrucción especial al Jurado.(10)

■ Por último, no podemos sustraernos del hecho de que la prueba presentada dispone, o explica de manera satisfactoria, del planteamiento del apelante sobre la no celebración de un procedimiento de identificación "adecuado". La Policía de Puerto Rico, habiendo abandonado el apelante la jurisdicción, estaba impedida de celebrar un procedimiento de "rueda de detenidos" (*line-up*). Esto es, dicha agencia del orden público llevó a efecto el *único* procedimiento de identificación posible ante esas circunstancias: el de fotografías. De todas maneras, la norma vigente en esta jurisdicción respecto a la admisibilidad de prueba sobre el procedimiento de identificación realizado "depende de la totalidad de las *circunstancias* presentes en el mismo". (Énfasis en el original.) *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 309 (1987). Véase *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172, 183 (1978). Un examen de los autos nos convence de la confiabilidad del procedimiento efectuado en el presente caso.

En resumen, y contrario a la contención del apelante, somos del criterio que la prueba en controversia, en lugar de causar confusión y desorientación en la mente de los señores del Jurado, es una que fue de gran ayuda en la *correcta* disposición que del caso ellos hicieran.

Por los fundamentos antes expresados, *se dictará sentencia confirmatoria de las convicciones decretadas a nivel de instancia.*

---

(10) A esos efectos, dice el *Manual de Instrucciones al Jurado*, aprobado por el Tribunal Supremo de Puerto Rico, 27 de marzo de 1980, pág. 30:

"[La huida o fuga] . . . es una circunstancia, de entender ustedes que ha sido probada, para ser apreciada y ponderada como tendiente, en algún grado, a demostrar un sentimiento de culpabilidad. El Tribunal enfatiza que dicha prueba por sí sola *no* es suficiente para establecer la culpabilidad del acusado. Es de la estricta incumbencia de ustedes el determinar su alcance así como el peso que merezca considerando todas las circunstancias que concurren en el caso." (Énfasis suplido.)