# 2001 DTA 122

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE CAROLINA-FAJARDO

EL PUEBLO DE PUERTO RICO
Apelado

v.

JAIME RODRIGUEZ OSORIO
Apelante

Núm. KLAN-00-00728

San Juan, Puerto Rico, a 14 de febrero de 2000

Panel integrado por su Presidente, el Juez Miranda De Hostos,
y los Jueces Aponte Hernández y Rodríguez García

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, Jaime Rodríguez Osorio, solicita que revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Fajardo, mediante la cual se le declaró culpable de haber violado el artículo 401 de la Ley de Sustancias Controladas en grado de reincidencia, en un juicio por jurado.

Inconforme con dicha decisión, acude ante nos alegando que incidió el tribunal de instancia: (1) al admitir prueba sobre las alegadas ventas de sustancias controladas del 14 de octubre de 1999, para las cuales no se instó acción criminal alguna, pues los hechos que dieron margen a la acusación criminal ocurrieron el 15 de octubre de 1999; y (2) al negarse a dar instrucciones al jurado que fueron solicitadas oportunamente.

Se confirma la sentencia emitida.

El 18 de octubre de 1999, se presentó denuncia contra el apelante por infracción al artículo 401 de la Ley de Sustancias Controladas. La denuncia imputaba que el 15 de octubre de 1999, en Fajardo, ilegal, voluntaria, maliciosamente, a sabiendas y en común y mutuo acuerdo con el señor Jorge I. Hernández Ramos, poseyeron con intención de distribuir, la sustancia controlada conocida por cocaína sin autorización expresa para ello.

Determinada causa probable para arresto contra el apelante, la vista preliminar se llevó a cabo encontrándose causa probable para acusar. En relación con el señor Hernández Ramos, el tribunal no determinó causa probable. Se presentó acusación contra el apelante por los hechos ocurridos el 11 de octubre de 1999, según se estableciera en la denuncia del 18 de octubre de 1999.

El proceso de juicio por jurado comenzó el 8 de mayo de 2000, culminando el 17 de mayo de 2000. La primera testigo fue la agente Nilda I. Márquez Romero, que declaró que el día 15 de octubre de 1999, comenzó a trabajar en el turno de las 5:00 de la mañana hasta la 1:00 de la tarde bajo la supervisión del sargento Melvin García Hernández. Ese día se dirigió hacia la Barriada Obrera, con el propósito de tomar la colindancia posterior de la residencia número 409, que ubica en la calle Fraternidad, residencia del apelante Osorio, ya que había hecho unas observaciones en donde lo había visto vendiendo sustancias controladas en unión al joven conocido Georgie, de nombre Jorge I. Hernández Ramos. (E.E.P., pág. 2.)

Señaló la agente Márquez que se disponía a solicitar una orden de allanamiento con relación a esa residencia, pero como se le había olvidado la colindancia posterior a esa casa, le dijo al sargento García que la llevara nuevamente para coger los datos y completar la información para solicitar la orden. Cuando se dirigen por la calle Luis B. Celis de la Barriada Obrera en pleno día, la agente testificó que observó que había una guagua "*pick-up*", color azul que pertenece al señor Hernández Ramos y frente a esa guagua estaba el apelante fuera del vehículo en plena calle, sin ocultarse y Jorge a su lado. Frente a la guagua se encontraba un vehículo Hyundai blanco de cuatro puertas. (E.E.P., págs. 2-3.)

Señaló la agente que observó que el apelante tenía en sus manos varias bolsas plásticas, transparentes, con una sustancia color blanca en su interior que por su experiencia entendió que se trataban de bolsitas de cocaína. La agente estaba a una distancia de 25 pies. El señor Rodríguez Osorio le hace entrega de una de esas bolsas a un caballero que se encontraba de conductor en el Hyundai, y el señor Hernández Ramos se encontraba al lado del apelante observando la transacción. (E.E.P., pág. 3.)

La agente le informa al sargento García que esas eran las dos personas a las cuales hacía referencia en las tarjetas de allanamiento. Los agentes procedieron a arrestarlos, y le ocuparon al señor Rodríguez Osorio una bolsa de papel de estraza color marrón que tenía en su puño cerrado. La misma contenía en su interior siete (7) bolsas tamaño mediano plásticas transparentes con cierre de presión. Tenían en su interior la sustancia color blanco, que al practicarle la prueba de campo se constató que era cocaína. (E.E.P., págs. 3-4.)

Testificó la agente Nazario que el día anterior, 14 de octubre de 1999, como a la 1:00 de la tarde, había hecho vigilancia en un vehículo confidencial no rotulado en la residencia que resultó ser del señor Rodríguez Osorio. La vigilancia se llevó a cabo después de haber recibido una confidencia a través del sargento García. La agente testificó que mientras estuvo allí pudo observar varias transacciones que por su experiencia entendió que eran de drogas. Declaró que la persona a quien vio realizando dichas transacciones fue al señor Rodríguez Osorio. (E.E. P., págs. 4-6.)

Durante la vista también testificó el agente José M. Delgado Félix, quien iba en la parte de atrás del vehículo Ford-Explorer. No observó la transacción de venta droga, sino que se limitó a prestarle apoyó a los demas agentes. (E.E.P., pág. 7.)

Tanto el señor Hernández Ramos como el señor Rodríguez Osorio, como prueba de defensa, negaron que se hubiese llevado a cabo una transacción de drogas y que se encontraban en dicho sitio debido a que iban a realizar

unas reparaciones en la casa que se encontraba ubicada en el lugar. (E.E.P., págs. 9-11.)

En cuanto a las preguntas que se le hicieron a los testigos de defensa por parte del Ministerio Fiscal en particular por su comparecencia al juicio, surge que el señor Hernández Ramos declaró:

*"Que el Sr. Jaime Rodríguez Osorio le pidió que viniera a declarar lo que había ocurrido y que vino al Tribunal a declarar lo que ocurrió los días 14 y 15 de octubre de 1999."*

(E.E.P., pág. 11.)

Por otra parte, el señor Agosto Ramos declaró entre otros aspectos:

*"Que se entrevistó con el abogado como en cinco o seis ocasiones en la oficina de él donde fue citado para hablar del caso, que no fue a la Policía, ni fue a la Fiscalía. En la oficina del abogado hablamos de todo esto para asegurarnos, fuimos 3 ó 4 veces la oficina del abogado, asegurarnos que fuera lo que yo le decía ahora y lo que dije después. El abogado habló conmigo aparte, hablamos de lo que dijo Jorge, lo que Jorge iba a decir y lo que yo iba a decir teníamos que asegurarnos que fuera lo mismo."*

(E.E.P., pág. 13.)

Cuando la agente Márquez comenzó a declarar sobre el propósito para el cual ella se dirigió el 15 de octubre hacia la Barriada Obrera, la defensa objetó la admisión de dicha prueba. La defensa planteó que el admitir prueba sobre las alegadas observaciones de unas ventas de sustancias controladas y sobre la obtención de una orden de allanamiento para la residencia del apelante, crearía una confusión en los miembros del jurado y tendría un efecto inflamatorio.

Argumentó, además, que la admisión de la prueba era contraria a la Regla 9 de Evidencia y ponía al apelante en un estado de indefensión, ya que se estaba desfilando prueba de unos alegados hechos delictivos por los cuales no se le acusó, ni se tramitó orden de allanamiento. Argumentó que la admisión de la prueba privaría al apelante de un juicio justo e imparcial, por razón de que la acusación no imputaba conducta del 14 de octubre de 1999. El tribunal permitió la presentación de dicha prueba.

Durante el proceso de juicio, la parte apelante presentó moción solicitando instrucciones especiales al jurado. El tribunal de instancia se negó a dar ciertas instrucciones solicitadas referentes a: (1) la Regla 36 de Evidencia sobre la competencia de testigos; (2) diferencia en la prueba en arresto y prueba del juicio en sus méritos; (3) sobre la responsabilidad del abogado para con el cliente al preparar los testigos de defensa; y (4) en relación a la vista de determinación de causa probable en alzada, de otro imputado.

Celebrada la vista en su fondo, el jurado declaró culpable al apelante. El foro de instancia le impuso una sentencia de setenta y cinco (75) años de cárcel en grado de reincidencia y $300.00 en pena especial.

## II
Expongamos el derecho aplicable a la controversia ante nos.

Se alega, como primer error, que incidió el foro de instancia, al permitirle al Ministerio Fiscal presentar prueba sobre los eventos del 14 de octubre de 1999, cuando a la acusación era sobre los hechos del 15 de octubre.

No le asiste la razón.

La Regla 4 de Evidencia establece que no se dejará sin efecto una determinación de admisión de evidencia, ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia, a menos que: (1) la evidencia fue erróneamente admitida, a pesar de la oportuna y correcta objeción de la parte perjudicada por la

168

admisión; y (2) el tribunal que considera el efecto de la admisión errónea, entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita. 32 L.P.R.A. Ap. IV; *Pueblo v. Rosaly Soto*, 128 D.P.R. 729, 744.

Debido a que, como regla general, no se revocará sentencia o decisión alguna por motivo de error en la admisión de evidencia, a menos que la parte perjudicada por la admisión haya objetado la misma, oportuna y correctamente en el tribunal de instancia, las objeciones que no se realizan oportunamente en el proceso de instancia se entienden renunciadas y, como norma general, no serán examinadas en la etapa apelativa. *Pueblo v. Rivera Nazario*, opinión de 7 de noviembre de 1996, **96 J.T.S. 147**, pág. 321.

Demostrado el hecho de que la evidencia en controversia fue admitida por el foro de instancia sobre su oportuna y correcta objeción, el error en apelación se circunscribirá a determinar si la referida evidencia fue o no, factor decisivo o sustancial en el resultado del caso. *Pueblo v. Rosaly Soto, supra*, pág. 744.

El criterio que debe utilizarse para determinar si es un factor decisivo o sustancial en casos *"ordinarios"* de errores en la admisión de evidencia, es, si de no haberse admitido erróneamente la prueba en controversia, probablemente el resultado hubiera sido distinto. Esto es, si la evidencia erróneamente admitida puede haber tenido una influencia notable, determinante y hasta desmedida, en la mente del juzgador de los hechos en relación con el veredicto, fallo o sentencia que él mismo emitiera. *Pueblo v. Rosaly Soto, supra*, pág. 745; *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 786-787 (1991).

A esos efectos y en relación con procesos de índole penal, el tribunal apelativo deberá considerar: (1) si el proceso fue celebrado ante jurado o por tribunal de derecho; (2) si el resto de la prueba presentada por el Estado fue una de carácter circunstancial o, por el contrario, la misma consistió de evidencia directa; y (3) si el error cometido fue uno *"ordinario"* o, por el contrario, uno de los catalogados como constitucional. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 787 (1991).

Apliquemos la norma jurídica antes comentada a los hechos según reseñados, a los fines de la discusión del error alegado.

La prueba ofrecida por el ministerio Fiscal sobre los hechos del 14 de octubre de 1999, era parte de los eventos que dieron margen a la intervención del 15 de octubre, por los cuales fue acusado el apelante.

La prueba estableció que dado los eventos ocurridos el 14 de octubre, en particular sobre la venta de sustancias controladas donde había participado, entre otros, el apelante, al día siguiente, el 15 de octubre, los agentes fueron a constatar la dirección exacta para solicitar una orden de allanamiento, cuando se pudo observar a plena vista otra transacción de sustancias controladas. Esta transacción de drogas efectuada el día 15 de octubre, la cual pudo observar la testigo de cargo, es suficiente en derecho para la convicción apelada, aun descartando la declaración sobre los eventos del día 14 de octubre.

Por lo tanto, no podemos concluir, como sugiere el apelante, que la admisión de dicha prueba del 14 de octubre, es de tal naturaleza que de no haberse permitido la misma, el resultado del caso probablemente hubiera sido distinto.

Del análisis pausado y prudente de la prueba testifical que tuvo el jurado para emitir su veredicto, no podemos concluir que dicha prueba de los eventos del 14 de octubre, lo influenció notablemente, de manera determinante y desmedida para emitir un veredicto de culpabilidad, pues la declaración sobre los eventos del 15 de octubre, sobre la transacción de drogas del apelante, es suficiente en derecho para sostener su convicción, más allá de duda razonable.

Ante tales circunstancias, concluimos que el error no fue cometido.

# III

Se alega, como segundo error, que incidió el Tribunal de Primera Instancia al negarse a darle instrucciones al jurado, según le fueron solicitados, sobre la competencia de los testigos; sobre la diferencia entre la prueba para arresto y el juicio; sobre la responsabilidad del abogado con su cliente al reunirse con los testigos de defensa; y sobre la vista preliminar en alzada, y que no se determinó causa contra otro de los imputados.

El error no fue cometido.

En juicios ante jurado, el tribunal debe impartir instrucciones que incluyan un resumen de la evidencia y del derecho aplicable. Tienen, además, la ineludible responsabilidad de velar porque las instrucciones que impartan sean correctas, claras, precisas y lógicas. *Pueblo v. Sánchez Molina*, 134 D.P.R. 577, 590 (1993).

No podemos olvidar que los jurados son ciudadanos comunes legos que, como regla general, no conocen con exactitud las disposiciones y normas constitucionales y evidenciarias que entran en juego en los procesos penales. Precisamente, ello explica la necesidad del tribunal de ilustrarlos, a través de las instrucciones adecuada sobre los principios de derecho aplicables al caso ante su consideración. *Pueblo v. Nazario Hernández*, 138 D.P.R. 760, 772-73 (1995).

Se ha reconocido que sólo procede la revocación de una convicción, si el error al omitir o impartir la instrucción al jurado, es de tal naturaleza que de no haberse cometido, probablemente el resultado del juicio hubiera sido distinto o cuando el error cometido viola derechos fundamentales o sustanciales constitucionales del acusado. *Pueblo v. Acevedo Estrada*, opinión de 19 de enero de 2000, **2000 J.T.S. 22**, pág. 572.

Para determinar que el error en las instrucciones al jurado no es perjudicial y, por ende, no procede la revocación de la sentencia, el tribunal apelativo debe: (1) considerar la evidencia que el jurado consideró al llegar a un veredicto; y (2) sopesar el valor probatorio de dicha evidencia. *Pueblo v. Sánchez Molina*, 134 D.P.R. 577, 595 (1993).

Cónsono a tales principios, resolvemos que, en este caso, el tribunal de instancia no erró en las instrucciones al jurado. Veamos las razones.

La instrucción referente a la vista de determinación de causa probable en alzada, no procedía en derecho, toda vez que lo que se buscaba era que el jurado conociera la disposición legal que permitía dicho procedimiento con relación al otro imputado y no referente al acusado que estaba en el caso ante su consideración, por lo cual no era pertinente.

Tampoco procedían las instrucciones sobre la responsabilidad del abogado con su cliente referente a la preparación de los testigos de defensa, pues ello no era ilustrativo de disposición legal alguna necesaria para resolver el caso. Las preguntas que llevó a cabo el Ministerio Fiscal fueron generales y dirigidas a establecer la manera que los testigos de defensa comparecieron al juicio. No surge del expediente ante nos y de la exposición estipulada de la prueba que se comentara el silencio del acusado de forma directa o indirecta cuando se le hicieron tales preguntas. Tampoco surge del expediente que el Ministerio Fiscal hiciera expresiones faciales como se alega, para inducir al jurado a rendir el veredicto de culpabilidad. Por lo tanto, aun cuando fuera necesaria tal instrucción, el no haberse hecho la misma, no constituye un error perjudicial que da lugar a revocar la sentencia.

En cuanto a la competencia de los testigos y la diferencia en la prueba en arresto y prueba del juicio en sus méritos, tal instrucción no era necesaria, pues el jurado lo que debe dirimir es si la prueba que tenía ante sí, era suficiente para emitir un veredicto de culpabilidad, más allá de duda razonable.

Concluimos, pues, que ninguna de las instrucciones solicitadas al tribunal eran necesarias y no se afectaron derechos del acusado al no hacerlas. Valga señalar, además, que el apelante no ha demostrado que las instrucciones al jurado no fueran adecuadas.

## IV

Por último, en ausencia de error, prejuicio o parcialidad, no intervendremos con la apreciación de la prueba, ni con el veredicto condenatorio del jurado, quien está en mejor posición de aquilatar testigos, elementos éstos con los que no cuenta un tribunal apelativo y frente a los cuales debemos reconocer la inigualable posición en la que se halla el tribunal de instancia. *Pueblo v. Acevedo Estrada, supra,* pág. 573; *Pueblo v. Torres Rivera,* 137 D. P.R. 630, 641 (1994).

## V

Por los fundamentos expuestos, se confirma la sentencia emitida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General