*508 TEXTO COMPLETO DE LA SENTENCIA
El 18 de febrero de 2005, el Estado Libre Asociado de Puerto Rico (en adelante, el E.L.A.) presentó un recurso de certiorari en el que solicitó la revisión de la Orden emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el TPI), el 13 de enero de 2005, notificada y archivada en autos el 19 de enero de 2005. Mediante dicha orden, el TPI denegó la solicitud del E.L.A. a los fines de que se le permitiera utilizar el Informe de Valoración y el testimonio pericial del tasador contratado en primera instancia por la parte con interés Visteon Caribbean Operations (en adelante, Visteon).
El 26 de enero de 2005, el E.L.A. presentó Moción de Reconsideración.
El 1ro de febrero de 2005, notificada el 3 de febrero de 2005, el TPI emitió Orden en la que mantuvo en vigor la orden de 13 de enero de 2005.
I
Conforme a los autos originales del caso, el 30 de octubre de 2000, el E.L.A. presentó una petición de expropiación forzosa, a requisito de la Compañía de Fomento Industrial, para adquirir una parcela de terreno con un área superficial de 132,862.159 metros cuadrados, localizada en la esquina noreste de la Carretera Estatal Núm. 3, intersección con la Carretera Núm. 188 que conduce a Loíza, en el Barrio San Isidro del Municipio de Canóvanas. Como partes con interés se incluyeron a Visteon y a Plaza Noreste S.E., junto a Eduardo Ferrer Bolívar como socio gestor. El E.L.A. depositó en la Secretaría del TPI la cantidad de un millón ciento trece mil dólares ($1,113,000) como justa compensación. 
Cabe señalar que Plaza Noreste S.E. y Eduardo Ferrer Bolívar se incluyeron como parte con interés en consideración al “Offer and Purchase Agreement” que éstos suscribieron con Visteon el 1ro de junio de 1998. Conforme a dicho contrato, Visteon le confirió a Plaza Noreste S.E. una opción de compra sobre la propiedad expropiada por el término de treinta (30) días. La propiedad sería vendida por el precio de tres millones cuatrocientos mil dólares ($3,400,000). La transacción de compraventa debía ser completada para el 1rode diciembre de 1998. Alegadamente, Plaza Noreste S.E. hizo un pago inicial por la suma de trescientos sesenta mil dólares ($360,000).
Por otro lado, de acuerdo al contrato, en el Artículo 9.01, las partes dispusieron que de enfrentar Visteon un procedimiento de expropiación, Plaza Noreste S.E. debía completar la transacción de compraventa a menos que el valor de la propiedad se hubiera reducido sustancialmente durante el proceso. En el caso de que se procediera con la compraventa, la referida cláusula disponía que las sumas de dinero obtenidas como resultado de la expropiación serían acreditadas a Plaza Noreste S.E. En el caso de que Plaza Noreste S.E. determinara que el valor de la propiedad había sufrido una reducción considerable, tendría la potestad de dar por terminado el contrato y recibir el reembolso de lo pagado hasta el momento, siempre y cuando le hubiese notificado a Visteon, dentro de los quince días (15) de efectuada la expropiación.
Luego de varios incidentes procesales interlocutorios, el 10 de abril de 2001, Plaza Noreste S.E. presentó: “Moción Depositando Y/O Consignando Dinero Relacionado Con Compraventa Entre Plaza Noreste S.E. Y *509 Visteon Caribbean Inc., Y Solicitando Retención De Dinero Por El Tribunal Hasta Tanto Se Dilucide Controversia”. En lo pertinente, Plaza Noreste S.E. consignó en la Secretaría del TPI la cantidad de un millón novecientos noventa y nueve mil dólares doscientos setenta y siete dólares con noventa y cuatro centavos ($1,999,277.94), en cumplimiento con la prestación a la que se había obligado con Visteon para adquirir la propiedad objeto de expropiación. 
El 17 de mayo de 2001, Visteon presentó “Oposición A Moción Depositando Y/O Consignando Dineros Depositando Fondos Mantenidos En Cuenta En Plica”. En lo pertinente, Visteon se opuso a la consignación efectuada por Plaza Noreste y solicitó la eliminación de ésta como parte con interés, pues había incumplido con los términos del contrato suscrito por ambos.
Mediante Resolución de 27 de junio de 2001, notificada el 19 de julio de 2001, el TPI declaró “ha lugar” la consignación efectuada por Plaza Noreste S.E. y determinó que ésta había cumplido con el pago de la totalidad del precio pactado y, por consiguiente, había quedado perfeccionada la compraventa de la propiedad objeto de expropiación. A tenor con lo anterior, el TPI resolvió que Plaza Noreste S.E. había adquirido los derechos de Visteon en la acción de título.
Así las cosas, el 20 de agosto de 2001, el E.L.A. presentó un recurso de certiorari, caso núm. KLCE-2001-00949, en el que solicitó la revocación de la resolución aludida. De otra parte, en esa misma fecha, Visteon presentó otro recurso de certiorari, caso núm. KLCE-2001-00954, en el que solicitó la revocación de la misma resolución o, en la alternativa, que se le permitiera retirar de inmediato la suma de tres millones cuatrocientos setenta y dos mil doscientos setenta y siete dólares con noventa y cuatro centavos ($3,472,277.94) depositados en el TPI. Este Tribunal ordenó la consolidación de los recursos y en auxiho de jurisdicción, paralizó los procedimientos ante el TPI.
Posteriormente, el 14 de diciembre de 2001, este Tribunal emitió Sentencia en los casos KLCE-2001-00949 y KLCE-2001-00954. Mediante la misma, determinó que el E.L.A. había cumplido con todas las disposiciones de ley, por lo que había quedado investido del título absoluto de dominio sobre la propiedad a partir del 30 de octubre de 2000, fecha en que presentó la petición de expropiación forzosa. Además, resolvió que era Visteon, como titular y dueño de la propiedad al momento de la expropiación, la parte con derecho a litigar la justa compensación o, en la alternativa, retirar los fondos consignados por el E.L.A.. Así pues, ordenó la continuación de los procedimientos ante el TPI. 
Continuados los procedimientos ante el TPI, el 3 de julio de 2002, Plaza Noreste S.E. presentó escrito intitulado “Moción De Plaza Noreste S.E. Y Eduardo Ferrer Bolívar Sobre Intención De Continuar Participando En El Presente Caso Como Partes Con Interés”. En lo pertinente, el TPI declaró con lugar la solicitud de Plaza Noreste S.E. para continuar como parte con interés en el pleito. Por su parte, el E.L.A. solicitó reconsideración el 21 de noviembre de 2002. Mediante Orden de 25 de noviembre de 2002, notificada el 27 de noviembre de 2002, el TPI declaró “no ha lugar” la reconsideración.
Por otro lado, el 26 de noviembre de 2002, Visteon sometió ante el TPI el Informe de Valoración preparado por el tasador Javier E. Porrata. De acuerdo a dicho informe, el valor del terreno a ser expropiado ascendía a la cantidad de cuatro millones doscientos mil dólares ($4,200,000). 
Inconforme con el dictamen del TPI, el 20 de diciembre de 2002, el E.L.A. presentó recurso de certiorari ante este Tribunal, caso núm. KLCE-2002-01409. En lo pertinente señaló que el TPI había errado al reconocer a Plaza Noreste S.E. como parte con interés y permitir su participación en el caso.
Posteriormente, el 10 de mayo-de 2004, este Tribunal emitió Sentencia en la que resolvió que Plaza Noreste S.E. y Eduardo Ferrer Bolívar debían permanecer como partes con interés en el pleito. Asimismo, determinó *510 que una vez culminara el proceso entre Visteon y el E.L.A. para determinar la cantidad que constituia justa compensación, el TPI debía evaluar si Plaza Noreste S.E. había demostrado tener un interés de tal naturaleza que ameritara la concesión de una participación en la suma consignada como justa compensación. Resolvió, también, que el derecho concedido a Plaza Noreste S.E. para permanecer en el pleito, no le permitía intervenir en la litigación de la justa compensación, proceso al que sólo tenía derecho Visteon como dueño de la propiedad objeto de expropiación.
II
Continuados los procedimientos ante el TPI, el 20 de octubre de 2004, Visteon presentó “Moción Sobre Representación Adicional e Informativa”. En lo pertinente, informó que utilizaría el Informe de Valoración y el testimonio pericial del tasador Ing. Gonzalo Ferrer, el cual había sido sometido ante la consideración del foro de instancia por Plaza Noreste S.E. el 2 de marzo de 2001. Además, indicó que no utilizaría el informe ni el testimonio pericial del tasador Javier Porrata, quien había sido inicialmente contratado por ésta para realizar la tasación de la propiedad objeto de expropiación.
El 17 de noviembre de 2004, el E.L.A. presentó “Moción Informativa y Sobre Otros Extremos” en el que se opuso a que Visteon adoptara y utilizara el informe de valoración realizado por el Ing. Gonzalo Ferrer. En apoyo de su posición, el E.L.A. planteó que dicho informe no había sido preparado para el caso ni para la parte con interés que tenía derecho a litigar la justa compensación, o sea, para Visteon. También planteó que la tasación no había sido preparada asumiendo las condiciones de la propiedad a la fecha de la expropiación. Añadió que utilizar dicha tasación podría representar un conflicto de interés, ya que el Ing. Gonzalo Ferrer tasó la propiedad para Eduardo Ferrer Bolívar, quien era su sobrino y que había estado en una posición adversa a Visteon en el pleito. De otra parte, en la moción, el ELA señaló que en vista de que Visteon no utilizaría el informe de tasación ni el testimonio del tasador Javier Porrata, estaría en posición de utilizarlo como testigo conforme a la Regla 16 de las de Evidencia.
El 23 de noviembre de 2004, notificada el 30 de noviembre de 2004, el TPI emitió Orden en la que resolvió “no ha lugar” a la oposición del E.L.A. a que Visteon utilizara el informe y el testimonio del tasador Ing. Gonzalo Ferrer.
El 3 de diciembre de 2004, Plaza Noreste S.E. presentó Moción Informativa en la que indicó que no tenía objeción alguna en cuanto a que Visteon utilizara el informe de valoración y el testimonio pericial del Ing. Gonzalo Ferrer.
El 30 de diciembre de 2004, Visteon presentó Moción Informativa en la que planteó que el tasador Javier Porrata no era un testigo de hechos que fuera anunciado mediante contestación a interrogatorio o informe sobre conferencia con antelación ajuicio. No obstante, señaló que si el TPI, en su sana discreción, permitía que el E. L.A. citara al tasador Javier Porrata como testigo, limitara su testimonio a hechos personalmente conocidos por éste y no como perito, ya que el Estado tenía su propio perito cuya opinión sobre el valor de la propiedad había sido utilizada para iniciar- el procedimiento. Conforme a lo anterior, Visteon se mantuvo en su decisión de no autorizar el uso del informe de valoración preparado por Javier Porrata ni en este caso ni en ningún otro.
El 13 de enero de 2005, notificada el 19 de enero de 2004, el TPI emitió Orden en la que declaró “con lugar” la posición asumida por Visteon en cuanto a no autorizar el uso del informe de valoración preparado por el tasador Javier Porrata y que se limitara su testimonio a hechos de su conocimiento personal y no en calidad de perito.
El 26 de enero de 2005, el E.L.A. presentó Moción De Reconsideración.
El 1ro de febrero de 2005, notificada el 3 de febrero de 2005, el TPI emitió Orden en la que se mantuvo en *511 su determinación de no permitirle al E.L.A. utilizar el informe de valoración ni el testimonio del tasador contratado por Visteon.
Inconforme con el dictamen del TPI, el 18 de febrero de 2005, el E.L.A. presentó el recurso de certiorari que nos ocupa y señaló la comisión del siguiente error:

“ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE INSTANCIA AL DENEGAR LA SOLICITUD DEL ESTADO PARA PRESENTAR EN EVIDENCIA EL INFORME DE TASACIÓN DESCARTADO POR VISTEON Y UTILIZAR EL TESTIMONIO DEL PERITO TASADOR, CUANDO CONSTITUYEN EVIDENCIA PERTINENTE Y ADMISIBLE Y NINGUNA REGLA DE EVIDENCIA APUNTA A SU EXCLUSIÓN”

III
Sabido es que la pertinencia es condición necesaria para la admisibilidad de evidencia. La Regla 18 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 18, enuncia el principio general sobre admisibilidad y pertinencia de la siguiente forma:

“(A) Excepto cuando de otro modo se disponga por ley o por estas reglas, toda evidencia pertinente es admisible. Evidencia no pertinente es inadmisible.

(B) Evidencia pertinente es aquélla tendente a hacer la existencia de un hecho más probable o menos probable de lo que sería sin tal evidencia; dicho hecho debe a su vez, referirse a una cuestión en controversia o la credibilidad de algún testigo o declarante. ”

A tenor con lo anterior, excepto cuando de otro modo se disponga por ley, la evidencia pertinente es admisible, siendo la evidencia pertinente toda aquélla que haga de la existencia de un hecho más o menos probable de lo que sería sin tal evidencia. Pueblo v. Rosaly Soto, 128 DPR 729, 748 (1991).
Por su parte, la admisibilidad de evidencia pertinente está delimitada por las disposiciones de la Regla 19, 32 L.P.R.A. Ap. IV, R. 19, que dispone que:

“Evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores:

(a) Peligro de causar perjuicio indebido.

(b) probabilidad de confusión.

(c) desorientación del jurado.

(d) dilación de los procedimientos.

(e) innecesaria presentación de prueba acumulativa”.

La referida regla concede discreción al tribunal para determinar la exclusión de prueba, incluyendo la testifical, la cual aun siendo pertinente y no excluida por alguna ote regla, presente alguna circunstancia que impida la justa, rápida o económica solución de la controversia.
IV
“Los privilegios evidenciarios son reglas de exclusión basados en consideraciones de política pública. *512 Algunas de estas reglas tienen rango constitucional. De ordinario se trata de privilegios estatutarios”. Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Volumen III, 1993, a la página 428. Las Reglas 23 a la 32 de las de Evidencia tratan sobre los distintos privilegios reconocidos en nuestro derecho. 32 L.P.R.A. Ap. IV, R. 23 a 32.
La exclusión de materia privilegiada responde a diversas consideraciones adversas a la búsqueda de la verdad. Entre las mismas hallamos “consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales.” Ernesto L. Chiesa, Tratado de Derecho Probatorio, Reglas de Evidencia de Puerto Rico y Federales, Publicaciones J.T.S., Tomo 1, 1998, a las páginas 185-186.
Contrario a las reglas de exclusión asentadas en política pública, la exclusión de materia privilegiada no contempla consideraciones de valor probatorio. Id. El fundamento para este tipo de exclusión responde a un interés de nuestra sociedad de proteger determinada relación social, cuyo fortalecimiento depende del elemento de confidencialidad en la que, precisamente, se cimienta dicha relación.
V
En el presente caso, el 26 de noviembre de 2002, Visteon sometió ante el TPI el Informe de Valoración preparado por el tasador Javier Porrata. Conforme a dicho informe, el valor en el mercado del terreno a ser expropiado al 30 de septiembre de 2000, ascendía a la cantidad de cuatro millones doscientos mil dólares ($4,200,000).
Posteriormente, el 20 de octubre de 2004, Visteon determinó que utilizaría el Informe de Valoración y el testimonio pericial del tasador Ing. Gonzalo Ferrer, en el cual se valoraba la propiedad en la cantidad de diecisiete millones doscientos setenta y cinco mil dólares ($17,275,000). Dicho informe había sido sometido ante la consideración del TPI por Plaza Noreste S.E. el 2 de marzo de 2001. De otra parte, Visteon renunció a utilizar el informe y el testimonio del tasador Javier Porrata, a quien había contratado originalmente para realizar la tasación de la propiedad.
Así las cosas, E.L.A. se opuso a que Visteon utilizara el informe de valoración preparado por el Ing. Gonzalo Ferrer y, además, señaló que era su interés utilizar el informe de tasación y el testimonio del tasador Javier Porrata, el cual no sería utilizado ya por Visteon en el procedimiento para determinar la justa compensación de la propiedad.
Ante esta situación, Visteon se opuso a que el ELA utilizara el informe y el testimonio de Javier Porrata. Por su parte, el TPI declaró “con lugar” la posición asumida por Visteon en torno a no autorizar el uso del informe de valoración preparado por el tasador Javier Porrata y que se Hmitara su testimonio a hechos de su conocimiento personal y no en calidad de perito.
En su escrito, en síntesis, el E.L.A. destacó el hecho de que para impugnar el nuevo informe de valoración adoptado por Visteon y el testimonio del perito tasador Ing. Gonzalo Ferrer, resultaba esencial utilizar el informe de valoración y el testimonio del tasador Jorge Porrata. El E.L.A., además, llama la atención al hecho de que el informe de tasación que se propone presentar en evidencia es pertinente, razón por la cual es admisible. Expone que no hay una regla de exclusión específica de aplicación en éste caso. De otra parte, señaló que el TPI erró al no realizar un análisis del valor probatorio de la evidencia de la que se solicitó su admisión y al no aducir las razones para excluir la misma.
Por otro lado, Visteon planteó en su escrito ante nos, en lo pertinente, que el hecho de que el E.L.A. interese citar a Porrata como su perito puede llevar a que éste viole las normas éticas de su profesión. Cabe señalar que Visteon no fundamentó su planteamiento.
*513 Ciertamente, el informe de valoración preparado por el tasador Jorge Porrata y su testimonio tiene razonable pertinencia a los fines de impugnar el- informe de valoración adoptado por Visteon. Según ya indicáramos, el aludido tasador en el informe de valoración tasó el terreno expropiado en cuatro millones doscientos mil dólares ($4,200,000). Luego de haber presentado dicho informe ante el TPI, Visteon optó por adoptar la tasación preparada por el Ing. Gonzalo Ferrer, en el que se valora el inmueble en diecisiete millones doscientos setenta y cinco mil dólares ($17,275,000).
De otra parte, examinado el Código de Ética promulgado por la Junta de Evaluadores Profesionales de Bienes Raíces de Puerto Rico, a tenor con la Ley Núm. 277 de 31 de julio de 1974, se desprende que en el Artículo 15 dispone sobre la confidencialidad de los informes que preparan los tasadores. Dicho artículo establece que es contrario a la ética profesional para un tasador “discutir, revelar o poner en conocimiento mediante cualquier forma los datos, pruebas, análisis, o resultado de su estudio de avalúo a otras personas que no sean su cliente a menos que haya sido específicamente autorizado por éste para así hacerlo, o que sea requerido por un Tribunal de Justicia mediante el debido proceso de ley; o que quede relevado de dicha obligación después de haber testificado públicamente sobre dicho estudio y por consecuencia el informe se convierte en un documento de carácter público”, (énfasis nuestro).
En este caso no se viola el Código de Ética antes mencionado, pues el informe del perito tasador Javier Porrata y su testimonio serían presentados luego de haber sido autorizados por este Tribunal. Además, como mencionamos, dicho informe ya fue anunciado y sometido ante el TPI, por lo que no existe ninguna confidencialidad respecto a éste.
En virtud de lo anterior, entendemos que erró el TPI al privar al E.L.A. de utilizar el informe de valoración y el testimonio de Jorge Porrata en evidencia.
VI
Por los fundamentos antes expuestos, expedimos el auto de certiorari y revocamos la orden recurrida, permitiendo al E.L.A. utilizar el informe de valoración y el testimonio del Sr. Jorge Porrata.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones