Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Apelada<br><br>v.<br><br>JACKLYN LUGO COLÓN<br><br>Parte Apelante | KLAN202200686 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Sobre:<br>Art. 93-A CP<br>Art. 6.05 y<br>Art. 6.14<br>Ley de Armas<br><br>Caso núm.:<br>FVI2021G0015<br>FLA2021G0101-102 |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Rodríguez Flores y el Juez Salgado Schwarz[2]

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Comparece la Sra. Jacklyn Lugo Colón (señora Lugo Colón o parte apelante) mediante recurso de *Apelación Criminal por derecho propio y de forma pauperis[3]* y solicita que revoquemos la *Sentencia* condenatoria emitida el 25 de agosto de 2022 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el aludido dictamen, la señora Lugo Colón fue declarada culpable por infracciones al Art. 93 (Asesinato en segundo grado) del Código Penal de Puerto Rico[4] y a los Arts. 6.05[5] (Portación, transportación o uso de armas de fuego sin licencia) y 6.14[6] (Disparar o apuntar armas de fuego) de la Ley de Armas de Puerto Rico.

---

[1] Véase OATA-2023-175 que reasignó el caso del Panel X al Panel III, el 3 de octubre de 2023.
[2] Véase OATA-2025-068 del 7 de mayo de 2025 en la que se designa al Juez Salgado Schwarz en sustitución del Juez Figueroa Cabán.
[3] Con fecha del 15 de diciembre de 2022, se le asignó al Lcdo. José Soler Fernández – Sociedad para La Asistencia Legal-como abogados de oficio en esta etapa apelativa.
[4] 33 LPRA sec. 5142.
[5] 22 LPRA sec. 466d.
[6] 22 LPRA sec. 466m.

Examinados los escritos presentados, así como los autos originales del caso, la transcripción de la prueba oral[7] y el derecho aplicable, acordamos **confirmar** la *Sentencia* apelada.

**I.**

Surge del expediente ante nuestra consideración que, por hechos acontecidos el 3 de abril de 2021, el Ministerio Público presentó tres denuncias contra la señora Lugo Colón, una por infracción al Art. 93 (a) del Código Penal de 2012 de Puerto Rico[8] y otras dos por infracciones al Art. 6.05[9] y 6.14 (a)[10] de la Ley de Armas de Puerto Rico de 2020.[11] En específico, se le imputó haber actuado en concierto y común para asesinar a la Sra. Edmill De León García (señora De León García u occisa) al dispararle con un arma de fuego frente a la oficina de administración del motel Yess en Carolina.[12]

Así las cosas, el 28 de mayo de 2021, el TPI celebró una Vista Preliminar en la que se encontró causa probable por los delitos previamente citados.[13] Es menester señalar que, la señora Lugo Colón fue coacusada junto al Sr. Juan Castillo Martínez (señor Castillo Martínez o coacusado) quien falleció el 5 de junio de 2022 en una institución carcelaria.[14]

Culminados los trámites de rigor, se celebró el juicio contra la señora Lugo Colón ante un jurado. El juicio tuvo lugar los siguientes días: 18, 25 y 29 de octubre de 2021, 10, 11, 13, 26, 28 de enero de 2022, 7, 15, 16, 24 de febrero de 2022, 11 y 31 de marzo de 2022, 1, 18, 19, 20, 21, 22, 26, 27, 28, 29 de abril de 2022, 2, 3, 4, 5, 6,

---

[7] La transcripción de la prueba testimonial fue una de oficio y circulada a las partes en formato digital el 17 de enero de 2025.
[8] 33 LPRA sec. 5142.
[9] 25 LPRA sec. 466d.
[10] 25 LPRA sec. 466m.
[11] Autos originales, Denuncias del 6 de abril de 2021.
[12] *Íd.*
[13] Autos originales, Resolución Vista Preliminar.
[14] Transcripción de la prueba oral (TPO) pág. 1726, líneas 22-26.

9, 10, 11, 12, 13, 16 de mayo de 2022, 6 de abril de 2022 y 25 de agosto de 2022.[15]

La prueba presentada por el Ministerio Público durante el juicio consistió en la presentación de prueba testifical, a través del testimonio de diecinueve (19) testigos, y diversa prueba documental. El Ministerio Público presentó los siguientes testimonios: Agte. Janil Marie Ortiz De Jesús, Nadja Lebrón Ramos, Jin Marie Velázquez Claudio, Enid Feliciano García, Agte. Juan Carlos Ramos Maldonado, Zuleika Marie Rodríguez Delgado, Milagros García Montes, Luis Alfredo Otero Centeno, Alexandra Torres Pabón, Carmen Ivette Carrasquillo Matos, Tnte. Iván Bahr Silva, Agte. Carlos O. Torres Febres, Tnte. Roberto Ferreira García, Agte. José F. González Pérez, María Hernández Miranda, Ana Abigail Torres, Dra. Eda Luz Rodríguez Morales, Agte. Eric Rodríguez Calderón y Carmen S. Suliveras Ortiz.

De los diecinueve (19) testimonios, la parte apelante solo cuestionó las declaraciones de la Sra. Zuleika Rodríguez Delgado, la Sra. Carmen Ivette Carrasquillo Matos y las del Agte. Eric Rodríguez Calderón, por lo que resumiremos únicamente éstos.[16] Es menester destacar, además, que de los testimonios vertidos las partes estipularon el del testigo Luis Alfredo Otero Centeno. A su vez, la defensa contó con la presentación de prueba testifical a través del testimonio de la Agte. Karina Ojeda Erazo. Veamos el resumen de los testimonios cuestionados por la defensa:

**Testigo Zuleika Rodríguez Delgado**

La señora Zuleika Rodríguez Delgado (señora Rodríguez Delgado o testigo) declaró que laboraba en el Motel Yess junto con la señora De León García y que, el 3 de abril de 2021, ambas

---

[15] Autos originales.
[16] Mediante Resoluciones de 28 de enero de 2025 y 11 de junio de 2025, concedimos oportunidad a la parte apelante para que indicara con especificidad aquella prueba testifical que sustentara sus planteamientos. No obstante, se circunscribió a los tres testimonios antes mencionados.

estuvieron en el mismo turno de trabajo. En su testimonio indicó que, el día de los hechos, la señora De León García le solicitó a la señora Rodríguez Delgado que despachara a la parte apelante y al señor Castillo Martínez debido a que su tiempo en el motel había culminado y, por tanto, tenían que abandonar la habitación.[17] En cumplimiento con las instrucciones impartidas, la testigo le informó a la señora Lugo Colón -a quien identificó en sala- y al señor Castillo Martínez que su tiempo en el motel había culminado y tenían que abandonar la habitación.[18] De forma agresiva, la señora Lugo Colón le expresó a la señora Rodríguez Delgado que deseaba hablar con la supervisora del motel.[19] Agregó que la acusada se marchó de la habitación del hotel, condujo un vehículo de motor y se estacionó frente a la oficina del motel.[20] Ello, en espera de la supervisora.[21] Manifestó que, el coacusado, igualmente buscó su vehículo de motor y se estacionó frente a la oficina administrativa. La señora Rodríguez Delgado le comunicó a la señora De León García que la señora Lugo Colón deseaba hablar con una supervisora.[22] Declaró que observó que la señora De León García se dirigió a la cabaña donde se encontraba la parte apelante y el señor Castillo Martínez para limpiar la misma, luego de salir de la oficina de administración.[23] Acto seguido, la testigo percibió que la señora Lugo Colón le gritó "las vi, las puedo coger afuera".[24] Sin embargo, enfatizó que la señora De León García atendió la situación de forma civilizada y en voz baja, no obstante, la señora Lugo Colón le expresó "no me estés manoteando, ¿qué es lo que tú quieres mami, tú quieres un tiro?".[25] En su testimonio, la testigo expresó que, la parte apelante y el

---

[17] TPO pág. 1131, líneas 10-29; *Íd.,* pág. 1138, líneas, 14-25; *Íd.,* pág. 1149, líneas 2-7; *Íd.,* pág. 1213, líneas 13-15.

[18] *Íd.,* pág. 1149, líneas 8-11.

[19] *Íd.,* pág. 1137, líneas 19-24; *Íd.,* pág. 1138, líneas 2-5; *Íd.,* pág. 1150, líneas 14-18.

[20] *Íd.,* pág. 1157, líneas 27-28.

[21] *Íd.,* pág. 1172, línea 25.

[22] *Íd.,* pág. 1215, líneas 2-3.

[23] *Íd.,* pág. 1250, líneas 12-14.

[24] *Íd.,* pág. 1159, líneas 13-20.

[25] *Íd.,* pág. 1160, líneas 5-15.

coacusado pero en particular la señora Lugo Colón, acorralaron a la señora De León García.[26] Agregó que el señor Castillo Martínez golpeó a la occisa en su cabeza con un arma de fuego color negro.[27] Sostuvo que, la señora De León García le lanzó varios golpes, en un acto de defensa propia, al señor Castillo Martínez.[28] No obstante, ante los golpes de la occisa, el coacusado se tapó la cara y le disparó a la señora De León García.[29] Añadió que previo al disparo, notó que la señora Lugo Colón golpeó a la señora De León García.[30] Finalmente manifestó que luego del disparo, la señora Lugo Colón y el señor Castillo Martínez se marcharon del lugar.[31] La testigo alegó que, rápidamente, anotó la tablilla y acudió a socorrer a la señora De León García.[32] Finalmente, expresó que en el momento en que la ambulancia llegó al lugar de los hechos la señora De León García seguía con vida, pero en horas de la tarde falleció.[33] Durante la declaración, el Ministerio Público presentó al Jurado el video del motel, y las fotografías de la escena admitidos en evidencia.

### Testigo Carmen Ivette Carrasquillo Matos

La señora Carmen Ivette Carrasquillo Matos (señora Carrasquillo Matos o testigo) laboraba en Motel Yess en el área de mantenimiento y lavandería.[34] Esta relató que el día de los hechos se encontraba en el área de lavandería, la cual queda contigua con la oficina de administración.[35] La señora Carrasquillo Matos narró que estaba doblando ropa en dirección a una ventana en la que se veía la parte delantera del motel y la oficina de administración.[36] En ese momento observó que un vehículo de motor se estacionó frente

---

[26] *Íd.*, pág. 1180, líneas 6-9.
[27] *Íd.*, pág. 1161, líneas 5-25.
[28] *Íd.*, pág. 1162, líneas 1-5; *Íd.*, pág. 1257, líneas 20-25.
[29] *Íd.*, líneas 6-8; *Íd.*, pág. 1258, líneas 1-5.
[30] *Íd.*, líneas 13-19.
[31] *Íd.*, líneas 21-27.
[32] *Íd.*, pág. 1163, líneas 2-6.
[33] *Íd.*, pág. 1184, líneas 11-16.
[34] *Íd.*, pág. 1307, líneas 7-8.
[35] *Íd.*, pág. 1308, líneas 7-8.
[36] *Íd.*, pág. 1308, líneas 23-29.

a la entrada del motel, lo cual estaba prohibido.[37] Mencionó que inmediatamente escuchó la voz de una dama alterada.[38] La señora Carrasquillo Matos relató que, la señora De León García estaba acorralada por el señor Castillo Martínez y la apelante.[39] Recitó que, escuchó a la señora De León García informarle a la señora Lugo Colón y el señor Castillo Martínez que "esas son las, las re...yo no tengo la culpa esas son las reglas".[40] Recalcó que la occisa lo expresó de forma calmada pero la señora Lugo Colón estaba alterada.[41] La señora Carrasquillo Matos relató que le ordenó a la parte apelante y al señor Castillo Martínez que "dejaran" a la señora De León García pero el señor Castillo Martínez golpeó en la cabeza a la occisa.[42] Tras el golpe, la testigo observó que la señora De León García le arremetió un golpe al señor Castillo García.[43] Instantáneo, la señora Lugo Colón agredió a la señora De León García.[44] La testigo afirmó que, en segundos, el señor Castillo Martínez le disparó a la occisa y este junto con la señora Lugo Colón se marcharon rápidamente de la escena del crimen.[45] Después, la señora Carrasquillo Matos arguyó que llamó a la ambulancia y procedió a asistir a la señora Rodríguez Delgado a atender a la señora De León García.[46] Finalmente, declaró que, luego de pasado un tiempo desde que la ambulancia recogió a la señora De León García, la supervisora les informó que la señora De León García había fallecido.[47]

### Testigo Agte. Eric Rodríguez Calderón

El Agte. Eric Rodríguez Calderón (Agte. Rodríguez Calderón) expuso que el 3 de abril de 2021, fue notificado sobre una muerte

---

[37] *Íd.*, pág. 1309, líneas 3-8.
[38] *Íd.*, líneas 17-23.
[39] *Íd.*, pág. 1310, líneas 20-27.
[40] *Íd.*, pág. 1311, líneas 4-10.
[41] *Íd.*, pág. 1311, líneas 12-13.
[42] *Íd.*, pág. 1312, líneas 13-20.
[43] *Íd.*, pág. 1313, líneas 1-3.
[44] *Íd.*, líneas 4-5.
[45] *Íd.*, líneas 13-18.
[46] *Íd.*, pág. 1315, líneas 2-9.
[47] *Íd.*, pág. 1316, líneas 1-4.

violenta acontecida en el Motel Yess de Carolina, Puerto Rico.[48] Este mencionó que, al llegar al lugar de los hechos, una compañera de trabajo le manifestó que una persona había resultado herida de bala por una situación ocurrida en el motel y, posteriormente, declarada muerta por herida de bala en el hospital.[49] El Agte. Rodríguez Calderón adujo que entrevistó a la administradora del motel en aras de corroborar las grabaciones contenidas en las cámaras de seguridad.[50] Asimismo, relató que examinó las cámaras de seguridad y observó como la señora Lugo Colón se detuvo frente a la oficina de administración y entonces el señor Castillo Martínez se bajó de su vehículo y comenzaron a dialogar entre ellos.[51] El testigo narró que la occisa se marchó del área de administración y se dirigió a una habitación y, simultáneamente, la señora Lugo Colón comenzó a "manotear" y discutir con la señora De León García, descrita por el agente como una situación acalorada.[52] Incluso, el Agte. Rodríguez Calderón destacó que la parte apelante golpeó a la señora De León García previo al disparo.[53] Además, este indicó que los testigos que observaron los hechos describieron como agresiva a la parte apelante y sintieron temor.[54] Asimismo, afirmó que el testimonio de la señora Rodríguez Delgado confirmó que la parte apelante insultó y amenazó a la señora De León García.[55] El Agte. Rodríguez Calderón identificó en sala a la apelante.[56]

Por otro lado, el Agte. Rodríguez Calderón expresó que pudo observar a través de la cinta que el señor Castillo Martínez comenzó a acercarse hacia la señora Lugo Colón y la señora De León García y extrajo de su cintura un arma de fuego con el que golpeó y apuntó

---

[48] Íd., pág. 1518, líneas 20-23.
[49] Íd., pág. 1519, líneas 21-24.
[50] Íd., pág. 1520, líneas 2-7.
[51] Íd., pág. 1521, líneas 3-9.
[52] Íd., líneas 22-30.
[53] Íd., pág. 1586, líneas 19-22.
[54] Íd., pág. 1557, líneas 8-18.
[55] Íd., pág. 1569, líneas 18-23
[56] Íd., pág. 1530, línea 16.

la cara de la occisa.[57] Sin embargo, el testigo expresó que el señor Castillo Martínez no fue parte de la discusión iniciada por la parte apelante.[58] Ahora bien, declaró que la occisa se defendió del golpe, pero el señor Castillo Martínez le disparó en el pecho.[59]

El Agte. Rodríguez Calderón puntualizó que, conforme a una información recibida, fue a buscar a los coacusados en el residencial Manuel A. Pérez en horas de la noche.[60] Al día siguiente, la señora Lugo Colón y el señor Castillo Martínez fueron arrestados.[61] El Agte. Rodríguez Calderón narró que, con las debidas advertencias, procedió a entrevistar al señor Castillo Martínez.[62] Así pues, el Agte. Rodríguez Calderón indicó que realizó una rueda de detenidos en la que estaba el señor Castillo Martínez.[63] La señora Rodríguez Delgado identificó al señor Castillo Martínez como la persona involucrada en el asesinato de la señora De León García.[64] Una vez culminada la rueda de detenidos, el Agte. Rodríguez Calderón expuso que llevó a cabo la rueda de confrontación con respecto a la señora Lugo Colón.[65] Nuevamente, la señora Rodríguez Delgado procedió a identificar a la parte apelante como una parte involucrada en el asesinato de la occisa.[66]

Tras el desfile de prueba en el juicio y escuchadas las argumentaciones de las partes, el 16 de agosto de 2022, el jurado rindió un veredicto de culpabilidad de forma unánime en los siguientes delitos:

   a. Art. 93 (A) (2do grado) del Código Penal de 2012.[67]
   b. Art. 6.05 Ley de Armas de Puerto Rico.[68]
   c. Art. 6.14 de Ley de Armas de Puerto Rico.[69]

---

[57] Íd., pág. 1522, líneas 4-8.
[58] Íd., pág. 1582, líneas 7-9.
[59] Íd., líneas 10-12.
[60] Íd., pág. 1529, líneas 1-3.
[61] Íd., pág. 1530, líneas 1-4.
[62] Íd., líneas 26-28.
[63] Íd., pág. 1531, líneas 21-26.
[64] Íd., pág. 1534, líneas 1-3.
[65] Íd., pág. 1540, líneas 7-8.
[66] Íd., líneas 22-26.
[67] 33 LPRA sec. 5142
[68] 22 LPRA sec. 466d
[69] 22 LPRA sec. 466m.

Consecuentemente, el 25 de agosto de 2022, el TPI llevó a cabo el acto de pronunciamiento de sentencia en contra de la señora Lugo Colón. Las penas de cárcel a las que ésta fue condenada fueron las siguientes: cincuenta (50) años por infringir el Art. 93 del Código Penal, veinte (20) años por al Art. 6.05 de la Ley de Armas de Puerto Rico y diez (10) años en cuanto al Art. 6.14 de la Ley de Armas de Puerto Rico. En cuanto a las penas impuestas por la Ley de Armas, el TPI les impuso un agravante conforme el Art. 6.01 de la Ley de Armas de Puerto Rico. Además, dispuso que las penas serían extinguidas de forma consecutiva entre sí, para un total de ochenta (80) años de reclusión.

Inconforme con el veredicto de culpabilidad, el 25 de agosto de 2022, la parte apelante acudió ante este foro revisor mediante el recurso de apelación de epígrafe, en el cual plantea los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Primera Instancia al encontrar culpable a la señora Lugo Colón del delito de Asesinato en segundo grado cuando el mismo fue eliminado del Código Penal por la Ley Núm. 40 de agosto de 2021, violentando los principios de legalidad, de responsabilidad penal y de favorabilidad.

> Erró el Honorable Tribunal de Primera Instancia al encontrar culpable a la señora Lugo Colón aun cuando no se probó su culpabilidad más allá de duda razonable.

Luego de los correspondientes trámites apelativos, el 4 de junio de 2025, este Tribunal dio por estipulada la transcripción de la prueba oral. A su vez y luego de varias prorrogas, la parte apelante presentó su alegato el 17 de julio de 2025 y la Oficina del Procurador General, en representación del Pueblo de Puerto Rico, presentó su correspondiente alegato el 22 de septiembre de 2025. Luego, el 26 de septiembre de 2025, la parte apelante instó una *Moción de Réplica.*

Con el beneficio de los autos originales del caso, la transcripción de la prueba oral y la comparecencia de las partes, resolvemos.

**II.**

La Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, establece que la presunción de inocencia es uno de los derechos fundamentales que le asiste a toda persona acusada de cometer un delito. La garantía constitucional a la presunción de inocencia acompaña al imputado de delito desde el inicio de la acción penal hasta el fallo o veredicto de culpabilidad.[70]  Dicho esto, la Regla 110 de Procedimiento Criminal también trata el tema de la presunción de inocencia. Sobre este particular, la referida regla establece que, "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá".[71]

A tenor, el Ministerio Público tiene la obligación de presentar suficiente evidencia sobre todos los elementos del delito y su conexión con el acusado a fin de establecer la culpabilidad de este más allá de duda razonable.[72] Así pues, conforme a nuestro ordenamiento jurídico, el acusado no tendrá obligación alguna de aportar prueba para defenderse y podrá descansar plenamente en la presunción de inocencia que le cobija.[73]

Ahora bien, tal estándar de exigencia probatoria no significa que el Ministerio Público tendrá que presentar prueba que establezca la culpabilidad del acusado con certeza matemática.[74] La prueba sobre la culpabilidad del acusado es satisfactoria cuando produce certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido.[75]

---

[70] E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Fórum, 1992, Vol. II, pág. 111; E.L Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa,* Puerto Rico, Ed. SITUM, Inc., 2018, pág. 154.
[71] 34 LPRA Ap. II, R. 110.
[72] *Pueblo v. García Colón I,* 182 DPR 129, 174-175 (2011).
[73] *Pueblo de Puerto Rico v. Rosaly Soto,* 128 DPR 729, 739 (1991).
[74] *Pueblo v. Toro Martínez,* 200 DPR 834, 856 (2018).
[75] *Pueblo v. Carrasquillo Carrasquillo,* 102 DPR 545, 552 (1974).

En cuanto a la duda razonable que acarrea la absolución del acusado, no es una duda especulativa o imaginaria, ni cualquier duda posible. Más bien, se trata de aquella duda que es producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso.[76] En resumen, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba.[77]

De otro lado, la determinación sobre si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación como una cuestión de derecho, toda vez que, "la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho".[78]

### A.

En el ámbito penal, opera el postulado básico de que la ley que aplica a unos hechos delictivos es aquella vigente al momento de cometerse el delito.[79] En consonancia, el principio de favorabilidad, contenido en el Artículo 4 del Código Penal de 2012, establece expresamente que la ley penal aplicable es la vigente al momento de la comisión de los hechos.[80] Además, dispone que la ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito por lo que, si la ley vigente al momento de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.[81] Asimismo, presupone que si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, esta se aplicará

---

[76] *Pueblo v. García Colón I*, supra, pág. 175.
[77] *Íd.*
[78] *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002), citando a *Pueblo v. Rivera, Lugo y Almodóvar*, 121 DPR 454 (1988).
[79] 33 LPRA sec. 5004; *Pueblo v. DiCristina Rexach*, 204 DPR 779, 787 (2020), citando a *Pueblo v. González*, 165 DPR 675, 684 (2005); *Pueblo v. Rexach Benítez*, 130 DPR 273, 301 (1992).
[80] 33 LPRA sec. 5004.
[81] *Íd.*

retroactivamente.[82] También, si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad. En todas estas circunstancias, los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.[83]

Conforme al principio de favorabilidad, procederá la aplicación retroactiva de la ley penal cuando favorezca a la persona imputada de delito.[84] Los efectos de este principio resultan en un tratamiento más favorable para una persona acusada cuando, con posterioridad a la comisión de los hechos delictivos, se apruebe una ley penal más favorable. En esos casos se debe aplicar retroactivamente la referida ley de modo que la persona acusada disfrute sus beneficios.[85] La tratadista Dora Nevares Muñiz razonó que "la fórmula para determinar cuál es la ley más favorable consiste en comparar las dos leyes, la ley vigente al momento de cometer el delito con la ley nueva, y aplicar aquella que en el caso objeto de consideración arroje un resultado más favorable para la persona".[86]

Ahora bien, el principio de favorabilidad no es de rango constitucional, por lo que queda dentro de la prerrogativa total del legislador la aplicación retroactiva de las leyes penales que favorezcan al acusado.[87] En ese sentido, el legislador tiene la potestad para establecer excepciones al principio de favorabilidad, ordenando la aplicación prospectiva de la ley vigente al momento del hecho punible, aunque sea más desfavorable para el acusado que la ley vigente al momento de la condena.[88]   Así, a través de las

---

[82] *Íd.*
[83] *Íd.*
[84] *Pueblo v. Torres Cruz*, 194 DPR 53, 59 (2015), citando a *Pueblo v. Hernández García*, 186 DPR 656, 673 (2012).
[85] *Íd.*
[86] D. Nevares-Muñiz, *Derecho penal puertorriqueño,* 7ma ed. rev., San Juan, Inst. para el Desarrollo del Derecho, 2015, pág. 94.
[87] *Pueblo v. González*, supra, pág. 686.
[88] *Íd.*

cláusulas de reserva se advierte la intención del legislador en imponer limitaciones al principio de favorabilidad.[89]

**B.**

El Art. 92 del Código Penal de Puerto Rico de 2012, *supra*, define el término *asesinato* como "dar muerte a un ser humano a propósito, con conocimiento o temerariamente".[90] El elemento objetivo del delito de asesinato es dar muerte a un ser humano; mientras que el elemento subjetivo, es cuando la persona actúa a propósito, con conocimiento o temerariamente.[91] En ese sentido, el Art. 22 (1)(a) del Código Penal de 2012, *supra*, señala que, "una persona actúa 'a propósito' cuando su objetivo consciente es la producción de dicho resultado".[92] A su vez, "una persona actúa 'con conocimiento' cuando está consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta.[93] Asimismo, "una persona actúa temerariamente cuando está consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley".[94]

Como corolario de lo anterior, el Art. 93 del Código Penal de 2012, *supra*, establece que "toda otra muerte de un ser humano causada temerariamente constituye asesinato en segundo grado".[95] Nuestro más Alto Foro ha expresado que la malicia premeditada es el elemento mental requerido en el delito de asesinato.[96] Ello, implica la ausencia de una excusa y conciencia al ocasionar la muerte de una persona.[97] Ahora bien, el asesinato en segundo grado es considerado una muerte maliciosa y premeditada, <u>pero en el que</u>

---

[89] *Íd.*, págs. 698-699.
[90] 33 LPRA sec. 5141.
[91] Nevares Muñiz, *op.cit*, págs. 149-150.
[92] 33 LPRA sec. 5035(1)(a).
[93] 33 LPRA sec. 5035(2)(a).
[94] 33 LPRA sec. 5035(3).
[95] 33 LPRA sec. 5142.
[96] *Pueblo v. Negrón Ayala*, 171 DPR 406, 419 (2007).
[97] *Íd.*; Véase *Pueblo v. Carmona, Rivera*, 143 DPR 907, 914 (1997); *Pueblo v. Robles González*, 132 DPR 554, 563 (1993).

la deliberación está ausente.[98] En el asesinato en segundo grado, basta con tener el elemento de malicia premeditada. Es decir, la intención de realizar un acto o producir un grave daño corporal que con toda probabilidad resultará en la muerte de una persona.[99] En cambio, el asesinato en primer grado requiere malicia premeditada y deliberación, por lo que se distingue por la intención específica de dar muerte a una persona.[100] Cabe mencionar que, la deliberación y malicia son elementos subjetivos del acusado que no pueden comprobarse mediante prueba directa, por lo que se debe recurrir a los hechos del caso para determinar si estas se pueden inferir razonablemente.[101]

En lo pertinente a la controversia ante nuestra consideración, debemos resaltar que el citado artículo fue enmendado mediante la aprobación de la Ley Núm. 40-2021[102] únicamente para reconocer y establecer el feminicidio y transfeminicidio como conductas que constituyen el delito de asesinato en primer grado. En consecuencia, el mencionado artículo no sufrió enmienda alguna en cuanto al asesinato en segundo grado.

## C.

Como norma general, en nuestro ordenamiento jurídico, los tribunales apelativos les otorgan gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y la adjudicación de credibilidad que hacen los tribunales de primera instancia.[103] Lo anterior, por razón de que, los jueces del TPI están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de los

---

[98] *Pueblo v. Rosario*, 160 DPR 592, 609 (2003).
[99] *Íd.*, pág. 610, citando a *Pueblo v. Blanco*, 77 DPR 767, 775 (1954).
[100] *Íd.*, pág. 609.
[101] *Pueblo v. López Rodríguez*, 101 DPR 897, 898-899 (1974).
[102] 33 LPRA sec. 5142.
[103] *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).

testigos.[104]  Según expuso el Tribunal Supremo de Puerto Rico en el caso de *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012):

> [C]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho. De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de esa prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia.

Conforme con ello, nuestro Máximo Foro ha reiterado que, el foro apelativo no deberá intervenir con las determinaciones de hechos, con la adjudicación de credibilidad realizada por los foros primarios, ni con el ejercicio de su discreción, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto.[105]  Por lo que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el foro apelativo estará imposibilitado de intervenir con la apreciación de la prueba y las determinaciones de los tribunales de instancia.[106]  En términos generales, "incurr[irá] en pasión, prejuicio o parcialidad aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna".[107]

Como se indicó anteriormente, la apreciación de la prueba desfilada en un juicio criminal es un asunto combinado de hecho y derecho y, por lo tanto, se podrá revisar en apelación lo relacionado a si el Ministerio Público probó más allá de duda razonable la culpabilidad del acusado.[108]  Consecuentemente, puede existir una excepción a la doctrina de abstención "en [los] casos en que un análisis integral de dicha prueba cause en nuestro ánimo una

---

[104] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

[105] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

[106] *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009).

[107] *Dávila Nieves v. Meléndez Marín*, supra, pág. 782.

[108] *Pueblo v. Irizarry*, supra, pág. 788.

insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia".[109]

Específicamente, el foro intermedio podrá intervenir con la apreciación de la prueba cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado".[110]  A tenor con lo anterior, si luego de que se realiza un análisis ponderado sobre la prueba desfilada, se sostiene que existe duda razonable y fundada sobre si se probó la culpabilidad del acusado más allá de duda razonable, este Tribunal deberá dejar sin efecto el fallo o veredicto condenatorio emitido por el foro de primera instancia.[111]  Es importante destacar que, la determinación de culpabilidad que realiza el foro de primera instancia estará cobijada por una presunción de corrección y regularidad y, por ende, es merecedora de gran deferencia por parte de este Tribunal.[112]

**III.**

En su primer señalamiento de error, la parte apelante alega que incidió el TPI al encontrarla culpable de cometer el delito de asesinato en segundo grado toda vez que dicho delito fue eliminado del Código Penal mediante la aprobación de la Ley Núm. 40-2021. Así pues, arguye que el TPI violentó los principios de favorabilidad, de responsabilidad penal y de legalidad. *No le asiste la razón.*

Cual discutido, el principio de legalidad establece que no se debe incoar una acción penal en contra de una persona por un hecho que no esté tipificado como un delito.[113] De igual forma, no se puede sancionar a una persona por un delito si no lo ha realizado según las formas de culpabilidad provistas en el Código Penal de 2012.[114] A su vez, el principio de favorabilidad se activa cuando se

---

[109] *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).
[110] *Pueblo v. Santiago*, 176 DPR 133, 148 (2009).
[111] *Pueblo v. Cabán Torres,* supra, pág. 655.
[112] *Íd.*, págs. 653-654.
[113] 33 LPRA sec. 5002.
[114] *Íd.*

aprueba una ley posterior más beneficiosa para el acusado o confinado, siempre y cuando no exista una cláusula de reserva.[115]

Ahora bien, de entrada debemos señalar que no le asiste razón a la parte apelante en su primer planteamiento de error. Una lectura del texto de la Exposición de Motivos de la Ley Núm. 40 de 27 de agosto de 2021 refleja que esta fue creada únicamente con el propósito de atender el aumento alarmante de muertes violentas de mujeres y mujeres transgénero. A esos efectos, dispone que se aprobó con el propósito de reconocer y establecer el nombre apropiado para dichos delitos mediante la incorporación de los términos "feminicidio" y "transfeminicidio" y así distinguir los elementos constitutivos de estos.

En el caso de epígrafe, si bien la parte apelante fue sentenciada el 25 de agosto de 2022, ello es, luego de que fuera aprobada la Ley Núm. 40-2021, lo cierto es que tal aspecto no resulta favorable en forma alguna a su condena. Recordemos que la señora Lugo Colón fue encontrada culpable por cometer el delito de asesinato en segundo grado y varios delitos tipificados en la Ley de Armas de Puerto Rico. Ninguno de estos delitos fue derogado mediante la aprobación de la Ley Núm. 40-2021. Nótese una vez más que la referida ley se limitó exclusivamente a tipificar como delito el asesinato hacia la mujer y mujer transgénero como feminicidio y transfeminicidio. De forma que, dicha enmienda no tuvo el efecto de derogar el asesinato en segundo grado.

Por tal razón, somos del criterio de que el TPI cumplió con el principio de legalidad, favorabilidad y responsabilidad penal con relación a la parte apelante. Las acciones ejecutadas por la señora Lugo Colón y dirigidas a provocarle un daño a la señora De León García, se encuentran tipificadas como delito en el Código Penal.

---

[115] *Pueblo v. González*, supra, págs. 685-686.

Así, en virtud de que el delito de asesinato en segundo grado no fue derogado por ley alguna, nos resulta forzoso concluir que el TPI no erró al encontrar culpable a la señora Lugo Colón de cometer dicho delito.

En su segundo señalamiento de error, la parte apelante arguye que el TPI erró al encontrarla culpable aun cuando no se demostró su culpabilidad más allá de duda razonable, pues el Estado no probó que ella fuera autora de los delitos. La señora Lugo Colón sostiene que no actuó en concierto y común acuerdo con el coacusado sino que este, por el contrario, tomó sus decisiones de forma autónoma y por voluntad propia sin que esta lo llamara, instigara o incitara a disparar contra la señora De León García.

Según fuera previamente reseñado, el Art. 93 del Código Penal de 2012 establece que una persona comete el delito de asesinato en segundo grado cuando le da muerte a un ser humano de forma temeraria.[116] A su vez, explicamos que una persona exhibe una conducta temeraria cuando está casi segura de que su acción generará un riesgo sustancial de que se produzca el resultado prohibido por ley.[117] Conforme con este principio, el asesinato en segundo grado se produce cuando un ser humano produce un grave daño corporal o exhibe una conducta que con toda probabilidad tendrá como resultado la muerte de una persona. Por tal razón, en el presente caso, el Ministerio Público, como parte de sus deberes ministeriales para establecer el asesinato en segundo grado, debía presentar evidencia tendente a probar que la señora Lugo Colón: (1) le dio muerte a un ser humano y; (2) que la acción de darle muerte ocurrió por temeridad.[118]

Por otro lado, no es indispensable que un acusado ejecute personalmente el acto delictivo. Conforme al Artículo 44 de Código

---

[116] 33 LPRA sec. 5142.
[117] 33 LPRA sec. 5035.
[118] *Íd.*

Penal, se consideran autores "[l]os que a propósito o con conocimiento cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, que contribuyen significativamente a la consumación del hecho delictivo". 33 LPRA sec. 5067.

Ahora bien, es meritorio destacar que es doctrina legal reiterada en nuestra jurisdicción que la apreciación de la prueba realizada por los foros de primera instancia debe ser objeto de respeto y deferencia.[119] Ello debido a que, son los foros de instancia los que están en mejor posición para evaluar la prueba desfilada, pues son quienes tienen la oportunidad de observar y escuchar a los testigos.[120]

Tras un examen desapasionado del expediente ante nuestra consideración y de la transcripción de la prueba oral desfilada ante el foro primario y en atención a la deferencia que debemos otorgar al dictamen bien fundamentado del foro primario, no vemos que éste haya incurrido en un craso abuso de discreción, o haya mediado prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Veamos*.

De la prueba oral vertida en el juicio se desprende que la parte apelante actuó en concierto y común acuerdo con el señor Castillo Martínez. Según la prueba presentada, cuando la señora Rodríguez Delgado se acercó a ella en la marquesina de la cabaña para informarle que su tiempo de renta había terminado, la apelante respondió de forma agresiva, intimidante y gritándole que quería su nombre y que llamara a la supervisora. Más adelante, la señora Lugo Colón aceleró su vehículo y le gritó "dale mami muévete que te estoy esperando", de manera agresiva. Luego, cuando la apelante vio a la señora De León García salir con el carrito de limpieza le gritó "las vi,

---

[119] *Pueblo v. Acevedo Estrada,* 150 DPR 84 (2000).
[120] *Íd.*

las puedo coger afuera", a lo que la occisa respondió que no le estaba faltando el respeto para que la estuviera amenazando. Entonces, la señora Lugo Colón le dijo "¿qué es lo que tú quieres mami, tú quieres un tiro?", de forma agresiva. Ahí, la apelante y el señor Castillo Martínez se acercaron a la señora De León García, la acorralaron, se le pegaron, el señor Castillo Martínez sacó su arma, le dio a la occisa en la cabeza, ésta se defendió pegándole y él le disparó en el pecho. Después la apelante y el señor Castillo Martínez se fueron corriendo. El incidente quedó corroborado con el video del motel, el testimonio de las empleadas del motel y las fotografías mostradas a los testigos mientras testificaban. La participación de la señora Lugo Colón fue una activa en los hechos que llevaron al asesinato de la señora De León García.

El testimonio de los testigos reflejó que fue la parte apelante quien comenzó la situación que terminó en el asesinato de la señora Lugo Colón. Además, quedó demostrado que la parte apelante desplegó, en reiteradas ocasiones, una conducta agresiva hacia la occisa al confrontarla y amenazarla con hacerle daño. Además, por si fuera poco, la parte apelante amenazó expresamente a la señora De León García con dispararle e incluso la agredió. Todo ello previo a que el señor Castillo Martínez disparara mortalmente contra la señora De León García. Siendo así, es nuestro parecer que la amenaza de la señora Lugo Colón hacia la occisa evidencia que esta conocía sobre la existencia del arma y que, en efecto, planteó la posibilidad de utilizarla, lo que finalmente ocurrió cuando el señor Castillo Martínez disparó a la señora De León García mientras ambos la acorralaron.

Evaluada la totalidad de la prueba, concurrimos con el veredicto unánime del TPI en que la conducta de la parte apelante generó un riesgo sustancial a la vida de la señora De León García. La conducta violenta, agresiva y amenazante de la parte apelante

hacia la señora De León García tuvo como consecuencia la muerte de esta. Por tal razón, colegimos que la prueba desfilada es suficiente para sostener las convicciones más allá de duda razonable. Por lo anterior, no existe razón por la cual debamos modificar la apreciación de la prueba hecha por el Jurado en el foro primario.

A la luz de lo anteriormente expuesto, concluimos que el TPI no cometió los errores señalados por la parte apelante. Procede que confirmemos la *Sentencia* apelada.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones